Barbara MARTIN, Plaintiff
and Appellant,

v.

Eugene L. MARTIN, Defendant
and Appellee.

No. 14280.

Supreme Court of South Dakota.

Considered on Briefs March 20, 1984.

Decided Nov. 21, 1984.

Daryl L. Hecht of Crary, Huff, Clem, Raby & Inkster, P.C., North Sioux City, for plaintiff and appellant.

Glenn A. Fingerson of Fingerson & Severson, Huron, for defendant and appellee.

WOLLMAN, Justice.

Plaintiff, Barbara Martin, was granted a divorce from defendant, Eugene Martin, on the ground of extreme cruelty. She appeals from certain provisions of the judgment. We affirm in part and reverse and remand in part.

Plaintiff, who is presently thirty-seven years of age, and defendant, who is forty-one, were married on September 4, 1967. Plaintiff, who had just graduated with an associate nursing degree, then became employed as a nurse at Sacred Heart Hospital in Yankton, while defendant started his third year of law school at the University of South Dakota.

Following defendant's graduation from law school in the spring of 1968, the parties moved to Huron, where defendant became associated with a law firm and plaintiff obtained a nursing position at St. John's Hospital. Defendant was inducted into the United States Army in late 1969. During the period of defendant's basic training, plaintiff lived with her parents in Jefferson, South Dakota, and was employed as a nurse at St. Luke's Hospital in Sioux City, Iowa. Following the completion of defendant's basic training, he was stationed at Ft. McClellan, Alabama. Plaintiff joined him there, where she worked as a nurse in Anniston, Alabama, from March of 1970 until November of 1971.

Following defendant's release from active duty, the parties returned to Huron, where defendant resumed his law practice and plaintiff resumed her nursing career at St. John's Hospital, where she worked until December of 1971, when she obtained a position as a nurse with a local doctor, for whom she worked until June of 1973, when she was forced to terminate her employment because of complications associated with her pregnancy. Following the birth of their second child, plaintiff did not return to work outside the home for several years. When she did decide to seek reemployment, she was unable to find a position as a nurse in a clinic.

Two children were born to the marriage, the first on June 4, 1972, and the second on December 27, 1973. (Because the parties entered into a stipulation and agreement, approved by the trial court, regarding the custody of the children, no issue regarding custody is presented to us on this appeal.)

Defendant accepted an appointment as a judge of the circuit court in March of 1979.

(We take judicial notice of the fact that he was re-elected to an eight-year term in the November 1982 general election.)

Plaintiff alleged, and the trial court found, that defendant had conducted himself towards plaintiff in a manner that constituted the infliction of emotional cruelty. According to plaintiff's testimony, defendant ignored her emotional needs and was difficult to communicate with. The parties sought marriage counseling from March until June of 1982, which apparently was unsuccessful. In August of 1982, defendant refused plaintiff's request that he resume counseling. Defendant informed plaintiff that he chose not to change in any way and that if she wanted to live with him she would have to live with him the way he was. The parties separated in late August of 1982. At the time of the separation plaintiff had been accepted for enrollment in a medical assistant training program in Watertown. It was plaintiff's understanding that her tuition and support for herself and her children would be paid by defendant. After she had moved herself and the children to Watertown, however, plaintiff was informed by defendant that any money expended on plaintiff's training would be deducted from her share of the property division in the divorce action. Plaintiff then decided that she would not go through with the training program and instead tried to find a position as a nurse in Watertown and the surrounding area, as well as in Sioux Falls and in Sioux City. At the time of trial, January 28, 1983, plaintiff had been actively seeking employment since November of 1982 with no success, due to a lack of nursing positions. She testified that several of the hospitals that she had contacted had informed her that they will hire only someone who has had experience within the last five years. Plaintiff herself has been away from nursing in a clinic situation for some nine and a half years and in a hospital position for eleven and one-half years. Accordingly, plaintiff enrolled in a home study refresher course in nursing offered by South Dakota State University. The refresher course involves fifty hours of home study, followed by one hundred hours of clinical work in a hospital under the supervision of a registered nurse.

Plaintiff testified that she anticipated that it would take her some three months to complete the refresher course. She also testified that a registered nurse with an associate degree could expect to work forty hours per week and earn from $7.00 to $8.00 per hour.

In her opening brief to this court, filed on October 27, 1983, plaintiff states that she only recently found a job at a Sioux City, Iowa, nursing home, where she earns $6.50 per hour.

At the time of the marriage, plaintiff owned a small amount of furniture and some personal effects. In addition, she had received a cash wedding gift from her father in the amount of $300.00. The income from her employment at the hospital in Yankton was used for the couple's living expenses during defendant's final year of law school. Thereafter, plaintiff's income was pooled with defendant's and utilized for living expenses.

Plaintiff owns a remainder interest in two tracts of land in Union County, South Dakota, from which she presently receives no income. One of the tracts is held in trust, subject to a life estate in plaintiff's grandmother, who at the time of trial was some 81 years of age. Upon the death of plaintiff's grandmother, the land is to be sold and the net sale proceeds remaining after payment of bequests in the amount of $1,500.00 are to be divided among plaintiff and her two brothers and her sister. This tract consists of some 70 untillable acres, 20 acres of which were described by defendant as an "an absolute jungle" that would have to be cleared in order to be utilized as farmland. Defendant testified that he thought the 70 acre tract was worth $2,000.00 per acre. Plaintiff had no opinion regarding the value of the land, other than the fact that several years ago farm land in the area was selling for between $1,500.00 and $2,000.00 an acre. Defendant introduced as an exhibit a compu-

tation by a certified public accountant, based upon current rates used for federal estate tax purposes, that showed the present value of the remainder interest in this land as having a total value of $100,-115.40, based upon a value of $2,000.00 per acre.

The same accounting firm prepared an exhibit which showed plaintiff's one-fourth interest in the other tract of land as having a present value of $16,871.43.

Prior to trial, plaintiff, as a result of discussions with defendant concerning her post-separation expense, living and retraining and expenses, withdrew $6,550.00 from the parties' joint savings account. Also, the parties divided their personal property.

The trial court found that the parties had accumulated an equity of $20,000.00 in their personal residence and held a certificate of deposit in the amount of $9,130.00. Defendant's HR–10 retirement account had a value of some $31,350.00, although the present value, after deducting the income tax due on early withdrawal, was $14,-137.00 at time of trial. His state judicial retirement account had grown to some $12,600.00 at time of trial (although the trial court valued it at $11,402.01, which was the balance in the account as of September 1982). The money in this account is available to defendant only if he leaves his position as circuit court judge. The trial court found that the only outstanding liabilities of the parties, other than the mortgage on their residence, were 1982 income and real estate taxes totaling $2,050.00.

Plaintiff testified that her health was fairly good, although she does have back problems resulting from a degenerating cervical disc. Her testimony in this regard was borne out by copies of medical reports that she introduced into evidence. Defendant did not dispute that plaintiff suffers from a degenerative disease of her cervical spine.

Plaintiff testified that she has difficulty lifting anything over twenty-five pounds in weight and that any grasping with her left hand results in pain. In her opinion, this restriction in her physical ability would limit her availability to work as a nurse in a hospital setting, such as in an intensive care unit.

A June 18, 1982, medical report indicated that plaintiff's CAT scan showed a very small bulging centrally of the L5–S1 disc.

The trial court's findings refer to the medical report regarding the herniated disc at the L5–S1 level, but make no reference to the problem with her cervical spine. The trial court found that with the exception of the back problem plaintiff was in good health. The trial court found that defendant was in good health.

The trial court ordered defendant to pay child support in the amount of $250.00 per month per child, including the two months of the year when he is to have custody of the children pursuant to the agreement of the parties.

The trial court divided the property as follows:

| Plaintiff's Share | | Defendant's Share | |
|---|---|---|---|
| Personal property (divided prior to trial) | $11,000.00 | Residence (equity) | $20,000.00 |
| | | Personal property (divided prior to trial) | 5,000.00 |
| Cash | 25,000.00 | | |
| Remainder interest in grandfather's land | –0– | Certificate of Deposit | 9,000.00 |
| | | H-R 10 account | 31,351.75 |
| | | State retirement account | 11,402.01 |
| Remainder interest in grandfather's land | –0– | | |
| | $36,000.00 | | $76,753.26 |

| Liabilities | |
|---|---|
| 1982 income tax | 1,000.00 |
| 1982 real estate tax | 1,050.00 |
| Cash payment to plaintiff ($25,000 less $6,550 received by plaintiff prior to trial) | 18,450.00 |
| | 20,500.00 |
| | $56,253.26 |

Although the trial court took into account plaintiff's vested interest in this land, it made no specific finding with respect to the value of that interest. Plaintiff offered no specific evidence regarding the value of the land or her interest therein and did not propose a finding regarding the value. Defendant's proposed finding regarding the value of plaintiff's interest in the land was rejected by the trial court.

Plaintiff contends that the trial court abused its discretion in dividing the property of the parties. We do not agree.

■ Trial courts have full power to make an equitable division of the property belonging to the parties to a divorce action, and in making such division of the property they shall have regard for equity and the circumstances of the parties. SDCL 25–4–44. In making a division of property in a divorce action, the trial court is bound by no mathematical formula. *See, e.g., Saint-Pierre v. Saint-Pierre,* 357 N.W.2d 250 (S.D.1984); *Booth v. Booth,* 354 N.W.2d 924 (S.D.1984); *Owen v. Owen,* 351 N.W.2d 139 (S.D.1984); *Wolff v. Wolff,* 349 N.W.2d

656 (S.D.1984); *Kressly v. Kressly,* 77 S.D. 143, 87 N.W.2d 601 (1958). The trial court must take into consideration the duration of the marriage, the value of the property owned by the parties, the ages of the parties, the health of the parties, the competency of the parties to earn a living, the contribution of each party to the accumulation of the property, and the income-producing capacity of the property owned by the parties. *See, e.g., Saint-Pierre v. Saint-Pierre, supra; Booth v. Booth, supra, Owen v. Owen, supra; Wolff v. Wolff, supra; Watt v. Watt,* 312 N.W.2d 707 (S.D. 1981); *Hansen v. Hansen,* 273 N.W.2d 749 (S.D.1979).

■ The trial court has broad discretion in dividing property, and a division of property will not be set aside or modified on appeal unless it clearly appears that the trial court abused its discretion. *Id.*

It appears that the trial court took each of the above-cited factors into consideration in arriving at its division of marital property. With the exception of the problem with her cervical spine and lower back, plaintiff

is apparently in good health. It does concern us that the trial court made no finding with respect to plaintiff's degenerating cervical spine, inasmuch as the evidence is uncontroverted that this condition exists. We conclude, however, that the trial court will have an opportunity to address this matter in greater detail on remand when considering the matter of rehabilitative alimony, discussed in greater detail below.

The trial court found that once plaintiff has completed her retraining, she should be able to earn approximately $12,000.00 per year as a registered nurse.

At time of trial, defendant's annual salary as a circuit judge was $43,750.00. (We take judicial notice of the fact that effective July 1, 1983, his salary rose to $45,500.00 per year (SDCL 16–6–5, as amended by 1983 S.D.Sess.Laws ch. 2, § 9), and that effective July 1, 1984, his salary rose to $49,140.00 per year (SDCL 16–6–5, as amended by 1984 S.D.Sess.Laws ch. 147, § 2).)

The trial court found that both parties had contributed to the accumulation of the marital property. Likewise, the trial court found that defendant had contributed to the value of plaintiff's remainder interest in the Union County land by providing free legal services in connection with the title to that land.

■ As pointed out above, the trial court made no specific finding regarding the value of plaintiff's interest in the Union County land. In the usual case, we would be required to remand the case to the circuit court for a finding on this issue. *See, e.g., Guindon v. Guindon,* 256 N.W.2d 894 (S.D.1977). Plaintiff, however, offered no evidence regarding the value of the property other than her own nebulous opinion regarding sales of other land in the area several years earlier. As we held in *Hanks v. Hanks,* 296 N.W.2d 523 (S.D.1980), it is the obligation of the parties to provide the trial court some competent evidence in addition to their own personal testimony regarding the value of their property. The

trial court should not be expected to go on a treasure hunt of its own to try to ferret out evidence that it is the parties' duty to provide.

■ Moreover, plaintiff did not submit a proposed finding on this issue or object to the trial court's general finding regarding plaintiff's interest in the land, other than to object to a finding that defendant had contributed to the value of plaintiff's interest and to generally object to the trial court's assigning any value to that interest in making a division of the marital property. Although plaintiff's interest in the land may not have had the value argued for by defendant, certainly it had some value. In the absence of a proposed finding or an objection to a proposed finding, plaintiff cannot be heard to complain that the trial court did not assign a specific value to this interest. *Burke v. Lead-Deadwood Sch. Dist. # 40–1,* 347 N.W.2d 343 (S.D.1984).*

Plaintiff contends that the trial court abused its discretion in failing to award alimony to her. We agree.

In *Guindon v. Guindon, supra,* we held that

[t]he amount and length of alimony payments is therefore left to the discretion of the trial court. SDCL 25–4–41. The factors for consideration in exercising that discretion are similar to those used in the property division, i.e., (1) the length of the marriage; (2) their respective earning capacity; (3) their respective financial condition after the property division; (4) their respective age, health and physical condition; (5) their station in life or social standing; and (6) the relative fault of the parties in the termination of the marriage.

256 N.W.2d at 898. In *Hanks v. Hanks, supra,* we adhered to the foregoing holding in *Guindon* and noted that although no longer generally a factor in making a division of property, the relative fault of the parties continues to be a consideration in making an award of alimony. *See also Booth v. Booth, supra.*

---

* We note that present counsel for plaintiff did not represent her at trial.

■ Quite understandably, plaintiff does not request alimony in the way of reimbursement for her contribution to defendant's completion of his law school education. In *Saint-Pierre v. Saint-Pierre, supra,* we held that in a proper case the trial court should award reimbursement alimony to a spouse who has contributed to the attainment of his or her spouse's professional degree. As a number of courts have pointed out, however, such reimbursement is not appropriate where the contributing spouse has benefited from the increased earning capacity resulting from the professional training that he or she had helped to finance. As the Supreme Court of Washington has stated:

> We point out that where a marriage endures for some time after the professional degree is obtained, the supporting spouse may already have benefited financially from the student spouse's increased earning capacity to an extent that would make extra compensation inappropriate. For example, he or she may have enjoyed a high standard of living for several years. Or perhaps the professional degree made possible the accumulation of substantial community assets which may be equitably divided.

*Washburn v. Washburn,* 101 Wash.2d 168, 181, 677 P.2d 152, 159 (1984). *See also Haugan v. Haugan,* 117 Wis.2d 200, 206, 343 N.W.2d 796, 800 (1984); *Grosskopf v. Grosskopf,* 677 P.2d 814, 823 (Wyo.1984).

We conclude that plaintiff has realized many of the benefits of the contribution that she made to defendant's professional education in terms of an increased standard of living during the course of their marriage and the social station that is attendant upon membership in the bar and as a member of the judiciary. Moreover, the trial court equitably divided the assets that defendant's increased earning capacity helped to purchase. Finally, plaintiff had secured her professional degree prior to the marriage and thus did not forego her own professional advancement. Accordingly, reimbursement alimony would not have been properly awarded in this case.

■ Rehabilitative alimony, however, as recognized by our holdings in *Booth v. Booth, supra,* and *Saint-Pierre v. Saint-Pierre, supra,* should have been awarded to plaintiff. Plaintiff had not practiced her profession for at least nine and one-half years prior to her separation from defendant and was required to undergo refresher training in order to be fully employable. In addition, we believe that the record quite clearly shows that at time of trial plaintiff was suffering some physical problems resulting from the degenerative condition of her cervical spine and the problems with her lower back that resulted in an impairment of her capacity to be employed in certain types of nursing positions. Although it is true that the trial court was in a much better position than we to judge the credibility of plaintiff's testimony regarding her physical condition, *Booth v. Booth, supra,* in view the uncontradicted medical reports and defendant's acknowledgement that plaintiff was suffering from problems with her back and with her cervical spine, we conclude that the trial court should have given more weight to plaintiff's health problems in making the decision on whether to award alimony.

As noted above, plaintiff presently receives no income from her interest in the Union County land. Her only income-producing property, then, is that portion of the cash award remaining after the payment of her living expenses not met by the child support award and her salary.

Finally, inasmuch as fault is a factor to be considered when deciding the question of alimony, *Guindon, supra; Hanks, supra,* we believe that the trial court should have taken into account the fact that it was defendant's refusal to change his conduct vis a vis plaintiff that caused plaintiff to leave the marital home and commence this action. Granted that this conduct was not as egregious as that which is demonstrated in many cases, it caused plaintiff to conclude that she had no choice but to leave the marital home and to terminate a marriage to a person who by virtue of his intelligence, hard work, and demonstrated

professional ability had secured a position of social and professional standing and public respect. It is true that defendant is burdened with substantial child support payments, as well as the living expenses attendant upon maintaining a lifestyle commensurate with one who holds an office of public visibility and public trust. Nevertheless, we believe that the trial court should have made some award of alimony to plaintiff to enable her to rehabilitate her professional skills and to make the transition from the role of full-time mother and housewife to that of her former professional career. Accordingly, we direct the circuit court to enter an award of alimony in accordance with the views set forth herein and in *Booth, supra,* and *Saint-Pierre, supra.* The amount of alimony and the period over which it is to be paid, must, of course, be left to the sound discretion of the trial court, based upon the present circumstances of the parties. On the basis of the record before us, however, and in view of the inherently temporary nature of rehabilitative alimony, we would think that the period would not exceed five years. Whether the circumstances will require that lengthy a period we do not venture to say.

Plaintiff also contends that the trial court abused its discretion in not awarding her attorney fees. We agree.

The allowance of attorney fees in a divorce action is a matter which rests within the sound discretion of the trial court. *See, e.g., Saint-Pierre v. Saint-Pierre, supra; Ver Meer v. Ver Meer,* 90 S.D. 351, 241 N.W.2d 571 (1976); *Jameson v. Jameson,* 90 S.D. 179, 239 N.W.2d 5 (1976). In making an award of attorney fees, the trial court should consider the property owned by each party, their relative incomes, whether the requesting party's property is in liquid or fixed assets, and whether the actions of either of the parties unreasonably increased the time spent on the case. *Barrett v. Barrett,* 308 N.W.2d 884 (S.D.1981); *Wallahan v. Wallahan,* 284 N.W.2d 21 (S.D.1979). Granted that plaintiff was awarded an immediate cash payment of $18,450.00 and that she receives $500 per month child support, she is faced with the need of providing adequate housing for herself and the children, together with other attendant living costs. Her personal property is not income-producing, nor is her interest in the property in Union County. Moreover, she was required to use for living expenses the $6,550.00 she withdrew from the savings account prior to trial, her request for temporary support during the pendency of the action having been denied. Accordingly, we direct that upon remand the trial court award plaintiff $1,500.00 in the way of attorney fees for the trial court proceedings.

We also direct the trial court to award plaintiff $1,500.00 for her attorney fees and costs on this appeal.

The judgment is affirmed with respect to the property division and is reversed with respect to the denial of alimony and attorney fees. The case is remanded to the circuit court for further proceedings consistent with the views and directions set forth in this opinion.

MORGAN, J., DUNN, Retired Justice, and HERTZ, Circuit Judge, concur.

HENDERSON, J., concurs in part and dissents in part.

HERTZ, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.

DUNN, Retired Justice, participating.

WUEST, Circuit Judge, Acting as Supreme Court Justice, not participating.

HENDERSON, Justice (concurring in part, dissenting in part).

I concur in part with the majority opinion and dissent in part on the award of rehabilitative alimony and attorney's fees in this case, as rehabilitative alimony should not be awarded where there is no need of rehabilitation. Furthermore, plaintiff has ample funds and property to defray her own attorney's fees, trial and appellate.

## PREAMBLE

In this era of the women's liberation movement,[1] is there any remaining viability to a theoretical basis for according alimony to an ex-wife not only upon the basis for what the wife should have, but what the husband can and ought to pay? It is good to see where we were in infancy, in Statehood, so we know where we went or where we are going.[2] The rule that this Court should consider not only what the wife should have, but what the husband can and ought to pay, was handed down in *Grant v. Grant*, 5 S.D. 17, 57 N.W. 1130 (1894). To this day, this case has not been overruled and for common sense, in pithy terms, it can serve as a polestar for the myriad of situations which can confront this Court now and in the future concerning alimony and rehabilitative alimony. This Court, I hasten to point out, has refined as set forth below, those factors to be taken into consideration in awarding alimony.

## PHILOSOPHIC VIEW

Dissents are more often frowned upon, than blessed, by the appellate textbook writers. Many academicians believe that the image of justice or the controlling precedent are sorely eroded by a dissent. There is, by and large, a traditional antipathy toward dissents in the appellate world. Historically, however, the healthy growth of law would stagnate and die without the pioneer in law—who is often the dissenter. It goes without saying that in the fields of scientific and social endeavor, without the spirit and gusto for achievement bosomed within the pioneer, America as a Nation would not have risen as the leader of the Free World. As the arrival of birds which foretell spring, dissents serve to predict or foretell a changing view in law. Often, a dissent is based upon existing precedent but refuses to recognize that the majority view has correctly applied the law to the facts of the case. In the latter, less creativity is noted, yet the influence and force of the dissent may impact the law in the future. Perhaps a minority viewpoint will serve the Bar and the Bench as a signal of caution and will linger on amber until it is given a green light in the future.

Rehabilitative alimony is a new concept to South Dakota and I fear its expansion where no rehabilitation is necessary. Although not blessed with mystic legal powers, I reasonably foresee onrushing domestic litigation seeking rehabilitative alimony as it is "new law in South Dakota." When a new tree suddenly appears in the orchard bearing fruit, it is likely that there are those who would stand under the tree to taste the sweetness of its bounty. The reader should note that it is the majority opinion which has reversed a decision of the lower court holding, in effect, that the lower court did not do equity to a litigant. It is noted that the lower court precisely articulated twenty separate findings of fact and entered thirteen well-reasoned conclusions of law. The trial court presided in a most sensitive case, as it involved another state trial judge, most certainly, and did, exercise the greatest of deliberation, aforethought, and equitable conscience. I am simply not offended by the values of quality here adjudged below and would accordingly affirm the trial court's judgment in its entirety. Thus, in reviewing, I question not the wisdom of the lower court as has the majority but, rather, persist in reviewing the legality of its acts. Is not this my duty and the function of this Court?

## DISSENT

"To me, rehabilitative alimony is an award of a monthly sum of money to reha-

---

1. From days of the Dakota Territory through early Statehood and until 1974, the husband and father was the head of the family and could choose a reasonable place or mode of living and the wife and mother was required to conform thereto. SDC § 14.0208 (1939). At the behest of this movement, this historic statute and concept was repealed in 1974 by our State Legislature (1974 S.D.Sess.Laws 173).

2. Alimony in South Dakota, from the days of the Dakota Territory through early Statehood and to 1977, was restricted by state statute to the receipt of alimony by wife from an offending husband. In 1977, this statute was amended to provide that either party, husband or wife, could be required to pay alimony to the other party. SDCL 25-4-41.

bilitate a deserving spouse so that he or she may obtain the skills necessary to fend for himself or herself in life, by education or job training." *Saint Pierre v. Saint Pierre*, 357 N.W.2d 250, 263 (S.D.1984) (Henderson, J., specially concurring). Plaintiff herein has received training as a registered nurse. Further, her recent employment with a Sioux City nursing home shows with certainty that she is employable as a registered nurse—without the necessity of additional vocational training. This employment also indicates that plaintiff's physical condition does not restrict her employability in her specialized field as a registered nurse. Plaintiff testified that she does not foresee any future medical needs. As a former trial lawyer and circuit judge, I remember well the adage in the trial courtroom: A party is bound by his (her) testimony.· 30 Am.Jur.2d *Evidence* § 1087 (1967); *Miller v. Stevens*, 63 S.D. 10, 256 N.W. 152 (1934).

Based upon these factors, the trial court did not deem it necessary to award alimony.

> The trial court has broad discretion in making a division of property and awarding alimony and this court will not set aside or modify its decision unless it clearly appears that the court abused its discretion. In determining whether the trial court abused its discretion, the property division and alimony award will be considered together.

*Wallahan v. Wallahan*, 284 N.W.2d 21, 26 (S.D.1979) (citations omitted). There was no abuse of discretion herein. SDCL 25-4-46 provides that "all orders and decrees touching the alimony and maintenance of a spouse ... are subject to revision on appeal in all particulars, including those which are stated to be in the discretion of the court." This Court has repeatedly taken the position that it will not disturb a decision of the circuit court upon a question of alimony unless there is an abuse of discretion. What, pray tell, is an abuse of discretion? How can we descend from our equitable throne to breathe practicality into that phrase? An "abuse of discretion" refers to a discretion exercised to an end or purpose

not justified by, and clearly against, reason and evidence. *Herndon v. Herndon*, 305 N.W.2d 917, 918 (S.D.1981). This trial court's decision in denying alimony was not clearly against reason and evidence. Unless it clearly appears that the trial court abused the discretion conferred upon it by state statute, this Court will not disturb an award of alimony or child support. *Hrdlicka v. Hrdlicka*, 310 N.W.2d 160 (S.D.1981). This Court reflects an overly sympathetic and compassionate decision establishing rehabilitative alimony, and thereby reversing the trial court below who had the parties and evidence all before it, and which is totally unjustified by the findings of fact and conclusions of law and the evidence which was submitted and heard by the trial court. It is a nice tuning by this Court which, in my opinion, errs in so holding. The majority opinion has dramatized the health factor of plaintiff, minimized her property award, and maximized defendant's assets to justify its holding. In effect, this Court has had an equitable, functional overlay. Plaintiff has good employment and a healthy cash award. The ex-husband ought not to pay when the ex-wife has a profession which will meet her needs, is practicing her profession, and obtaining financial security therefrom. Rehabilitative alimony should not be a gift. Alimony should not be a gift. There must be a sound and substantial reason, in the evidence, not only that the defendant can pay but that he ought to pay. This must be tempered with what the plaintiff should have.

Property division and alimony are to be considered together and it is evident by my reading of the trial court's decision and the rationale thereof that the trial court considered both (though not awarding alimony) in its decision.

An inherent fault lies in the reasoning of the majority opinion by isolating the subject of alimony. For, as we expressed in *Goehry v. Goehry*, 354 N.W.2d 192, 194 (S.D.1984), "[t]he trial court's award of alimony and the division of property *are considered together* on appeal to determine

whether the trial court abused its discretion. *Krage v. Krage,* 329 N.W.2d 878, 879 (S.D.1983) (emphasis supplied) ...."

Lastly, I dissent on an award of $3,000 in trial and appellate attorney's fees plus costs of appeal. Plaintiff ex-wife has a cash award of $18,450. She has, therefore, liquid assets to defray legal expenses. She is far from penniless and has not been turned out into the world without adequate means to fend for herself. Indeed, prior to trial, she received $11,000 in personal property and she is the recipient of two major vested inheritances in land of which she will enjoy the proceeds thereof sometime in the future. The ex-husband, incidentally, contributed greatly to the ex-wife's interests in her grandfather's and father's estates through handling probate at no charge, estate planning at no charge, and defending an adverse possession lawsuit on a portion of the land to be inherited by her at no charge. In Finding of Fact number 16, the trial court specifically found that through these acts of gratuity, the ex-husband had contributed to the acquisition of the inherited property. This property was set aside to the ex-wife and under *Clement v. Clement,* 292 N.W.2d 799 (S.D.1980), the trial court had a legitimate right to consider the fact that the ex-wife inherited the property but was not bound to set it aside for her and could have considered it as part of the property to be divided. *See* SDCL 25-4-44. Moreover, each month she is assured of a $500 child support stipend in addition to her salary. As the children will not, in this Midwestern culture, consume this total amount for groceries, clothing, and incidentals, surely some of the $500 per month payment will be used to defray partial housing and utilities. Thus, the ex-husband is affording her a degree of protection from the elements encompassed within the $500 per month child support. It strikes me that under all of the circumstances, a denial of an award of attorney's fees below was not an abuse of discretion

for the decision thereon was not clearly against reason and evidence. Again, this Court indulges in a sympathetic overlay towards the plaintiff when she should stand at the bar of justice imbued with no more or no less rights than any other litigant under similar facts and circumstances.

This case pointedly concerns alimony at the trial level (which was denied) and now rehabilitative alimony which has sprung, sua sponte, from this Court. A discourse on reimbursement alimony in the majority opinion is obiter dicta. The obiter dicta appears to be another attempt to engrain and engraft within the domestic relations law of the State of South Dakota an alimony of further dimension, by another name. In the days of repeated pronouncement and demands for equality and independence of the sexes,[3] it would appear that the State of South Dakota has veered sharply into a column of the liberalization of alimony. Historically, this would appear to be a paradox.

In conclusion, I would affirm the judgment of the trial court in toto.

---

3. Under ch. 1, 1973 Sess.Laws of the State of South Dakota, the State Legislature adopted a resolution approving the Equal Rights Amendment to the United States Constitution. Note that our historic statute on husband and father being the head of the family was repealed in 1974. By ch. 2, 1979 Sess.Laws, the resolution favoring the adoption of the ERA was rescinded.