Nancy E. BRADEEN, Plaintiff and Appellee,

v.

James B. BRADEEN, Defendant and Appellant.

No. 15892.

Supreme Court of South Dakota.

Argued March 24, 1988.

Decided Oct. 5, 1988.

Rehearing Denied Nov. 1, 1988.

James L. Waggoner, Rapid City, for plaintiff and appellee.

Hermon B. Walker, Rushmore Legal Center, Rapid City, for defendant and appellant.

MORGAN, Justice.

Nancy E. Bradeen (Nancy) and James B. Bradeen (James) were granted a divorce on May 29, 1987. James appeals only that portion of the decree regarding rehabilitative alimony and the partial award of attorney fees.

The parties had been married for approximately twenty-two years. At the time of divorce, James was earning approximately $28,000 per year and Nancy was earning less than $5,000, her wages being fixed at $3.80 per hour. By stipulation of the parties, accepted by the court, the total assets

of the parties were distributed, 58% to James and 42% to Nancy. Nancy is 43 years of age and James is 46 years of age. Each has a high school education. James attended two years of college. Both suffer from minor medical ailments which are not disabling. Both are employable. The trial court noted that Nancy had undergone a great decrease in her status in life due to separation of the parties and that she lives on her income and support payments. The trial court found the parties to be of equal fault in the divorce and granted divorce to each.

The trial court ordered James to pay rehabilitative alimony in the amount of $500 per month for eleven years, then to decrease by $100 for each of the next four years, to terminate at the conclusion of the fifteenth year. The trial court also awarded to Nancy partial attorney fees in the amount of $3,000. This left a balance to be paid by Nancy in the amount of $1,707.40.

Three issues are raised on appeal. (1) Whether the trial court abused its discretion in awarding rehabilitative alimony absent a showing of foregone opportunities. (2) Whether the trial court erred in rejecting James' proposed conclusion of law, which allegedly comports with the court's oral findings. (3) Whether the trial court abused its discretion in awarding to Nancy $3,000 in attorney fees.

We note initially that James does not dispute that rehabilitative alimony may have application to nonprofessional persons. In fact, James points out that rehabilitative alimony was awarded to a nonprofessional whose work career was displaced by marriage in *Booth v. Booth*, 354 N.W.2d 924 (S.D.1984). For a similar holding *see Hautala v. Hautala*, 417 N.W.2d 879 (S.D. 1988). The crux of James' argument is that there is no showing in this case that the marriage displaced Nancy's acquisition of job skills or occupational status.

"The amount and length of alimony payments is . . . left to the discretion of the trial court. SDCL 25–4–41." *Guindon v. Guindon*, 256 N.W.2d 894, 898 (S.D. 1977). *See Martin v. Martin*, 358 N.W.2d 793 (S.D.1984); *Booth, supra.* This court

will not disturb an award of alimony unless it clearly appears that the trial court abused its discretion. *Baltzer v. Baltzer*, 422 N.W.2d 584 (S.D.1988). Whether alimony, generally, is warranted, depends upon the trial court's consideration of the length of the marriage; the respective earning capacity of the parties; their respective financial condition after the property division; their respective age, health and physical condition; their station in life or social standing; and the relative fault in the termination of the marriage. *Arens v. Arens*, 400 N.W.2d 900 (S.D.1987); *Hanks v. Hanks*, 296 N.W.2d 523 (S.D.1980). Likewise, "the decision whether to award 'reimbursement' or 'rehabilitative' alimony, and, if so, *in what amount and for what length of time*, is committed to the sound discretion of the trial court." *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250, 262 (S.D.1984) (emphasis added). The guidelines the trial court should look to when awarding rehabilitative or reimbursement alimony include "the amount of supporting spouse's contributions, his or her foregone opportunities to enhance or improve professional or vocational skills, and the duration of the marriage following completion of the nonsupporting spouse's professional education." *Id.*

The purpose of rehabilitative alimony is to put the supporting spouse in a position to likewise upgrade their own economic marketability. *See Hautala, supra; Tesch v. Tesch*, 399 N.W.2d 880 (S.D.1987); *Martin, supra; Saint–Pierre, supra; Booth, supra.* As *Saint–Pierre* emphasized, we must not put the trial courts to the task of setting awards with mathematical precision; rather, they must be free to set such awards based on the peculiar facts and circumstances of each case. We cannot say, for example, that an award of six months is too short a period of time, and, conversely, several years is too long. Such rigid parameters would be to tie the equitable arms of the trial court. If an initial award of alimony is justified by the trial court and it finds evidence in the record, we are not going to disturb the same because the trial court, in good faith, has

miscategorized the type of alimony it has awarded. Categories (reimbursement and rehabilitative) are to be used as guidelines by the trial court for setting the method and defining the purpose of such payments. Misapplication of a guideline is not reason for reversal except in extreme examples of an abuse of discretion. In *Hautala*, we noted that "the issue is not the name placed on alimony, but whether the record supports the award." 417 N.W.2d at 882.

■ The trial court in this instance entered lengthy findings of fact covering all elements of property division, alimony, and rehabilitative alimony. In the trial court's oral findings, it specifically found

[Nancy] maintained and did those things [faithful homemaker and mother] while he was able to, over the years earn a better income, until he's reached the income of $28,000 a year. She's now trying to start a career and earning less than $5,000 a year.... The court should provide that a spouse who has served in the capacity that Mrs. Bradeen has served so long, should be given an opportunity to refresh and enhance her job skills so she can earn her own living. It is difficult to do that when you are still raising a child and attempting to maintain a living. So, rather than grant permanent alimony here, I am going to grant rehabilitative alimony. I am going to grant it over a long period of time, otherwise I'd be strapping Mr. Bradeen with an unreasonable amount of money to pay, and I think it will take quite a long time for Mrs. Bradeen to help rehabilitate herself, so she can earn a decent living.... Her contribution wasn't in the form of money, but in the form of being a homemaker and mother.... When someone gets married, they don't plan on being divorced someday, so in the strict sense, Mrs. Bradeen did not forego opportunities to enhance her professional or vocational skills.

We will not assume that a woman who has devoted more than twenty years of her life to being a wife, mother, and homemaker, would not have enhanced her employment skills had she remained a single person.

This leads to the obvious conclusion that opportunities were foregone. After setting the rehabilitative award, the trial court said: "I anticipate that in that term of years Mrs. Bradeen will be able to increase her skills and take whatever necessary courses and training she needs to take so she's able to support herself at that time." It is obvious that the trial court gave careful and thorough thought to this award and we find no abuse therein.

James next contends that the trial court's oral decision does not comport with the judgment and decree. We disagree.

■ If the findings of fact and conclusions of law prevail over a trial court's memorandum decision, *Moser v. Moser*, 422 N.W.2d 594 (S.D.1988), they certainly prevail over an oral pronouncement from the bench. We note here that the trial court incorporated its oral decision in it's conclusions of law and the judgment and decree of divorce set out a scale for the alimony payments as follows:

(1) For the period of May 1, 1987, through April 30, 1998, the sum of $500 per month;

(2) For the period of May 1, 1998, through April 30, 1999, the sum of $400 per month;

(3) For the period of May 1, 1999, through April 30, 2000, the sum of $300 per month;

(4) For the period of May 1, 2000 through and including April 30, 2001, the sum of $200 per month;

(5) For the period of May 1, 2001 through and including April 30, 2002, the sum of $100 per month.

Said rehabilitative alimony obligation shall terminate according to the time schedule set forth above or upon the death or remarriage of [Nancy], whichever event first occurs.

We find that, as no disparity exists between the oral pronouncement and the written schedule, James' argument is totally without merit.

For James' last issue on appeal, he alleges that the trial court failed to first find that attorney fees were reasonable and

suggests that such award should be modified or set aside. We disagree.

■ A review of the record reveals that the trial court considered all of the factors prescribed by our decisions in *Lien v. Lien,* 278 N.W.2d 436 (S.D.1979) and *Holforty v. Holforty,* 272 N.W.2d 810 (S.D.1978): (a) the amount and value of the property involved, (b) the intricacy and importance of the litigation, (c) the labor and time involved, (d) the skill required to draw the pleadings and the trying of the cause, (e) the discovery procedures utilized, (f) whether there existed complicated legal problems, (g) the time required to try the cause, and (h) whether written briefs were required in determining that attorney fees should be awarded and the amount of that award. The trial court particularly noted that James had materially increased the cost of these divorce proceedings and has the greater ability to pay. We find no abuse of discretion in awarding Nancy fees in the amount of $3,000, while leaving her responsible for $1,707.40.

Finally, both parties have moved for attorney fees on appeal in accordance with *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D. 1985). We award attorney fees to Nancy in the amount of $750.

Affirmed in all respects.

WUEST, C.J., and SABERS, J., concur.

MILLER, J., concurs in result.

HENDERSON, J., dissents.

MILLER, Justice (concurring in result).

I concur in the result of the majority decision.

I cannot blindly embrace the majority's statement that "Categories (reimbursement and rehabilitative) are to be used as *guidelines* by the trial court for setting the method and defining the purpose of such [alimony] payments. Misapplication of a *guideline* is not reason for reversal except in *extreme* examples of an abuse of discretion." (Emphasis added.)

Admittedly, we did note in *Hautala v. Hautala,* 417 N.W.2d 879, 882 (S.D.1988),

that "... the issue is not the name placed on alimony, but whether the record supports the award." However, that phrase was prefaced by the caveat "we urge the use of careful and consistent language...."

Subsequent to *Hautala,* we handed down *Baltzer v. Baltzer,* 422 N.W.2d 584 (S.D. 1988). In special writings, Justice Henderson and I reviewed the history of rehabilitative and reimbursement alimony cases in this court. In my special writing (which was joined by Justice Morgan), I opined that a trial court errs in failing to properly designate a special type of alimony it intends to award *and* in failing to make the appropriate findings to support such award. I still hold to such view.

In this case the trial court awarded alimony, improperly characterizing it as rehabilitative alimony. However, as the majority states, it did make findings which supported the award. *Under the specific circumstances of this case,* I cannot find that the trial court abused its discretion.

Lastly, although I believe the attorney fee award was excessive, it does appear that the trial court considered and applied the appropriate factors and I cannot state that it abused its discretion.

HENDERSON, Justice (dissenting).

I respectfully dissent. From the common law status of married women being economically incapacitated and dependent, alimony (a husband's marital duty to support his wife when she is no longer his wife) was birthed. Women now hold over fifty percent of the jobs in the United States, and they are not, as a general rule, either economically incapacitated or dependent. As circumstances change, perceptions should change.

For a collection of alimony cases in this Court over a ten-year period, with my special writings, *see Baltzer v. Baltzer,* 422 N.W.2d 584, 589 (S.D.1988) (Henderson, J., concurring specially). Alimony has grown by leaps and bounds in South Dakota. I have warned this Court of those who would like to stand under the alimony tree and

taste its sweet fruit. *See Arens v. Arens*, 400 N.W.2d 900, 903 (S.D.1987) (Henderson, J., specially concurring); *Martin v. Martin*, 358 N.W.2d 793, 801 (S.D. 1984) (Henderson, J., concurring in part, dissenting in part).

Since my recitation of the gathered cases in *Baltzer*, add these seven cases to the growing, flourishing alimony business/decisional law of this state: *Foley v. Foley*, 429 N.W.2d 42 (S.D.1988) (Henderson, J., dissenting); *Wright v. Wright*, 427 N.W.2d 372 (S.D.1988) (Henderson, J., concurring specially); *Henrichs v. Henrichs*, 426 N.W.2d 569 (S.D. 1988) (Henderson, J., concurring in part, dissenting in part); *Williams v. Williams*, 425 N.W.2d 390 (S.D.1988) (Henderson, J., concurring in result in part, dissenting in part); *Clarke v. Clarke*, 423 N.W.2d 818 (S.D.1988) (Henderson, J., disqualified); *Dixon v. Dixon*, 423 N.W.2d 507 (S.D.1988) (Henderson, J., concurring in part, dissenting in part); and *Moser v. Moser*, 422 N.W. 2d 594 (S.D.1988) (Henderson, J., concurring in result, without writing).

While the world concerns itself with the greenhouse effect and strategic arms reduction between the two great powers, and while heat and drought has parched the plains causing bad crops and thirsty livestock with resulting bankruptcies and an exodus from our farms/ranches, this Court is inundated with alimony appeals.

Essentially, I respectfully dissent on three grounds: 1) The record contains no plan for rehabilitation; 2) rehabilitative alimony is properly awarded for a short period whereas this award stretches out for fifteen years; 3) James is required to bear an unreasonable burden.

The first two grounds for dissent are interrelated, as the term for which rehabilitative alimony is awarded depends on the receiving spouse's training or educational needs. *See O'Neill v. O'Neill*, 13 Conn. App. 300, 536 A.2d 978 (1988).

The record indicates that Nancy sought *permanent* alimony, both in her complaint, and through her counsel at the conclusion of the trial. No evidence regarding any plans for further education or special training was presented to the trial court. Despite this, the trial court ordered James to pay "rehabilitative alimony" for fifteen years, at the rate of $500 per month for eleven of these years. The trial court's award has no relation, whatsoever, to the evidence before that tribunal. A trial court's decision must be soundly and substantially based upon the evidence. *Owen v. Owen*, 351 N.W.2d 139 (S.D.1984). "The term 'abuse of discretion' refers to 'a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" *Moore v. Moore*, 354 N.W.2d 732, 733 (S.D.1984) (*quoting Herndon v. Herndon*, 305 N.W.2d 917, 918 (S.D.1981)). Here, the trial court abused its discretion.

"Rehabilitative alimony has been defined as alimony payable for a *short*, specific, and determinable period of time, which payment will cease when the recipient is, in the exercise of reasonable efforts, in a position of self-support." 24 Am.Jur.2d *Divorce and Separation*, § 746, at 731 (1983) (emphasis added). "Rehabilitative alimony basically contemplates an award considered necessary to assist a dependent spouse in regaining a useful and constructive role in society through vocational training or retraining, or therapeutic rehabilitation." *Supra.* " 'Rehabilitative alimony has been used frequently when a dependent spouse enters a marriage with marketable skills, which then deteriorated through lack of use, or the dependent spouse is capable of becoming self-supporting through training or academic study.' " *Hoak v. Hoak*, 370 S.E.2d 473, 479 (W.Va.1988) (quoting *Cross v. Cross*, 363 S.E.2d 449, 451 (W.Va.1987)). As *O'Neill* indicates, the term of alimony is related to the educational end. Here, where there is no educational plan or announced ambition—goal, a fifteen-year term is uncalled for.

The third ground for dissent is that this husband should not be paying alimony. Is there a need or justification for alimony in this case? *Ought* he pay alimony? *Read Straub v. Straub*, 381 N.W.2d 260 (S.D. 1986); *Grant v. Grant*, 5 S.D. 17, 57 N.W. 1130 (1894). This ex-wife is knocking at the door of the Lady of Equity. A divorce

was granted to both parties. When she found a job, she also found another man, maintaining a "continuous relationship" with him since 1984. He happened to be an alcoholic journalist. She lost interest in her own husband and substituted her interest in her alcoholic journalist and in her job. She traveled by car, from Rapid City to the Fort Meade Hospital in Sturgis, specifically to visit this individual. Liberated? Husband was apparently a bad fellow. He did not like his wife having a relationship. The trial court found that ex-wife's relationship adversely affected husband both mentally and physically.

*Ought* he pay alimony? No! She and the alcoholic journalist should not live on her ex-husband's earnings for the next fifteen years.