**Rebecca STUDT, Appellant,**

v.

**Roger STUDT, Appellee.**

**No. 16291.**

Supreme Court of South Dakota.

Considered on Briefs March 23, 1989.

Decided July 5, 1989.

Robert B. Anderson, May, Adam, Gerdes & Thompson, Pierre, for appellant.

J.M. Grossenburg, Day & Grossenburg, Winner, for appellee.

WUEST, Chief Justice.

The trial court entered judgment granting Rebecca Studt (Rebecca) and Roger Studt (Roger) a divorce on the basis of extreme cruelty. Rebecca appeals those portions of the judgment regarding property division, alimony and child support. We affirm in part and reverse and remand in part.

The parties were married on August 14, 1970. At the time of trial, both parties were thirty-six years of age and enjoyed excellent health. Two children were born of the marriage, a daughter who was eight years old at the time of the divorce and a son who was age four at that time.

At the time of their marriage, Roger had an eighth grade education. Since the age of thirteen years, he had been engaged in farming. Rebecca had completed one year of college. During the first eight years of her marriage to Roger, Rebecca had worked at the South Dakota State Library in Pierre, South Dakota, and at a bank in Presho, South Dakota. Following the birth of the parties' first child, Rebecca did not

return to work outside the home. Instead, she devoted full time to her duties as a housewife and mother. Rebecca also contributed to the operation of the farm by occasionally helping with the chores and performing necessary bookkeeping tasks.

The parties' goal at the time of their marriage was to acquire a farming operation. The records show they were successful in attaining this goal. At the time of trial, they owned 775 acres of farmland and leased an additional 1200 acres. Of the 775 acres owned by the parties, 160 acres had been a gift from Roger's parents. This gift was made during the parties' marriage. The record shows that the parties had operated a profitable farm and that they had accumulated other property, including farm equipment, livestock and grain. The trial court credited the farming operation's success to both parties, finding that both contributed 100 percent of their time and efforts.

The trial court determined the value of the marital assets to be $261,642. It also found that the marital liabilities totalled $157,328 and that Roger brought into the marriage assets worth $13,000. After these amounts were subtracted, the value of marital property for division was $91,314. The trial court ordered Roger to pay Rebecca $25,000 as her interest in the marital property. Rebecca also was awarded various items in her possession and personal property. Roger was awarded the remaining marital property, along with the liability for the marital debts.

Rebecca was awarded rehabilitative alimony in the amount of $400 per month for thirty-six months. The trial court determined that rehabilitative alimony was necessary for Rebecca so that she could improve her chances of securing meaningful employment. Roger was also ordered to pay one-half of Rebecca's attorney fees.

Although the trial court found both parties to be fit parents, it awarded Rebecca primary custody of the children. The trial court determined the parties' average income for the five years preceding the divorce to be $23,370. It then ordered Roger

to pay child support in the amount of $250 per child per month.

On appeal, Rebecca contends that the trial court improperly computed the value of the marital assets, divided the property inequitably, and inadequately awarded rehabilitative alimony and child support. Rebecca also moves for additional costs and attorney fees for bringing this appeal. We will address each issue separately.

1. VALUATION OF MARITAL ASSETS

Rebecca argues that the trial court was clearly erroneous in valuing the parties' property, particularly the real estate, livestock, grain, and bank accounts and insurance. She also claims error in the trial court's determination of the parties' liabilities. We disagree with Rebecca's contentions with regard to the realty, but we find the trial court's determination of the value of the grain and the bank accounts and insurance to be clearly erroneous.

This court has previously held that "[e]xactitude is not required of the trial court in the valuation of assets in a dissolution proceeding; it is only necessary that the value arrived at lies within a reasonable range of figures." *Baltzer v. Baltzer*, 422 N.W.2d 584, 586 (S.D.1988) (*quoting Goehry v. Goehry*, 354 N.W.2d 192, 196 (S.D.1984)). The only time this court will interfere with a trial court's valuations is when they are clearly erroneous or where assets are completely overlooked by said court. *Herrboldt v. Herrboldt*, 303 N.W.2d 571, 572 (S.D.1981). In the absence of a stipulation as to the value of marital assets, the parties must "produce hard evidence as to those values other than their own personal opinions." *Hanks v. Hanks*, 296 N.W.2d 523, 526 (S.D.1980). The trial court, however, is not required to accept either party's proposed valuation. *Baltzer*, 422 N.W.2d at 586; *Hanks*, 296 N.W.2d at 526.

The record in the present case supports the trial court's findings with regard to the value of the real estate. At the trial, Rebecca introduced an appraisal valuing the real property at $139,600. She also testified that the value of the realty was

higher. In his testimony, Roger valued the real estate at $119,275. The trial court, in its findings of fact, stated that the parties' realty was worth $135,000. Since this figure approximates the appraisal submitted by Rebecca, we cannot find the valuation of the real property clearly erroneous.

■ With regard to the trial court's determining the value of the grain and bank accounts and insurance, it is readily apparent that errors exist, a fact which Roger concedes in his appellate brief. The trial court found the value of the grain to be $16,492. The record indicates that the actual value of the grain was $45,627. The trial court therefore evidently overlooked grain the value of which was $29,135. Of this amount, $22,873 is attributable to wheat which was being used to secure an ASCS loan. This loan, however, was taken into account in determining the extent of the parties' liabilities. The record also reveals a discrepancy between the actual value of the parties' bank accounts and insurance policies and that found by the trial court. The value of said accounts and policies, by Roger's own admission, was $1658 higher than the valuation of the trial court.

In light of the foregoing errors, we remand this issue to the trial court. We direct it to redetermine the value of the parties' personal property in its entirety.

## 2. DISTRIBUTION OF MARITAL PROPERTY

Rebecca submits that the trial court's division of the marital property was inequitable. She contends that the trial court abused its discretion in awarding her approximately twenty-seven percent of the marital assets, according to her figures, and in awarding Roger all of the income-producing assets.

■ A trial court has broad discretion with respect to property division and we will not set aside its judgment unless a clear abuse of discretion is shown. *Henrichs v. Henrichs*, 426 N.W.2d 569, 572 (S.D.1988); *Baltzer*, 422 N.W.2d at 587. Our review of the division of marital property is limited to determining whether it was equitable. *Id.* In dividing marital property, the trial court must consider equity and the circumstances of the parties. SDCL 25-4-44; *Henrichs*, 426 N.W.2d at 571. Factors to be considered in determining an equitable property division include: "the length of the marriage; the value of the property; the age and health of the parties; their respective competency to earn a living; the contributions of each party to the accumulation of the property; and the income producing capacity of the parties' assets." *Cole v. Cole*, 384 N.W.2d 312, 314 (S.D.1986). While these factors are considered, the trial court is bound by no mathematical formula in making a property division. *Martin v. Martin*, 358 N.W.2d 793, 797 (S.D.1984).

■ The trial court found that the parties' marriage lasted eighteen years. Both parties were thirty-six years of age and enjoyed good health. The trial court further found that Roger was a talented farmer and capable of earning a good living. Rebecca, although lacking training and substantial work experience, was also intelligent and capable of earning a living. Although the gifts from Roger's parents contributed to the parties' successful farming operation, the trial court found that each party also contributed 100 percent of their time and efforts building the farm's assets. Lastly, the trial court found the net value of the parties' property to be $91,314.

As previously mentioned, Rebecca was awarded $25,000 as her share of the marital property. The remaining income-producing property was awarded to Roger to enable him to fulfill his obligations regarding the property settlement and alimony and child support payments. For the most part, it is apparent that the trial court took into consideration each of the above-cited factors in arriving at its division of the marital property. We, however, feel compelled to remand this issue to the trial court for redetermination in light of the errors and oversights in valuation.

## 3. REHABILITATIVE ALIMONY

Rebecca contends that the trial court erred in awarding her rehabilitative alimony of only $400 per month for a period of three years. She further claims that the

trial court erred in considering the award of rehabilitative alimony together with her share of the marital assets. We note that Rebecca does not challenge the fact that she was not awarded "permanent" alimony.

 "The amount and length of alimony payments is ... left to the discretion of the trial court." *Bradeen v. Bradeen,* 430 N.W.2d 87, 88 (S.D.1988) (*quoting Guindon v. Guindon,* 256 N.W.2d 894, 898 (S.D.1977)). *See also* SDCL 25–4–41. This court will not disturb an award of alimony unless it clearly appears that the trial court abused its discretion. *Baltzer,* 422 N.W.2d at 587. In awarding alimony, the trial court must consider the following factors: "the length of the marriage, the respective earning capacity of the parties; their respective financial condition after the property division; their respective age, health and physical condition; their station in life or social standing; and the relative fault in the termination of the marriage." *Bradeen,* 430 N.W.2d at 88. Likewise, "the decision to award 'reimbursement' or 'rehabilitative' alimony, and, if so, *in what amount and for what length of time,* is committed to the sound discretion of the trial court." *Id.* (emphasis in original) (*quoting Saint–Pierre v. Saint–Pierre,* 357 N.W.2d 250, 262 (S.D.1984)). "The purpose of rehabilitative alimony is to put the supporting spouse in a position to likewise upgrade their own economic marketability." *Bradeen,* 430 N.W.2d at 88. *See also Wilson v. Wilson,* 434 N.W.2d 742 (S.D. 1989). Because each case is peculiar to its facts, the trial court is not bound to setting such awards with mathematical precision or within certain rigid parameters. *Id.* The trial court, however, in awarding rehabilitative or reimbursement alimony, should be guided by "the amount of supporting spouse's contributions, his or her foregone opportunities to enhance or improve professional or vocational skills, and the duration of the marriage following completion of the nonsupporting spouse's professional education." *Id.* at 745 (*quoting Saint–Pierre,* 357 N.W.2d at 262).

 Our review of the trial court's findings of fact in the present case indicates careful consideration in awarding rehabilitative alimony to Rebecca. The parties were married for a lengthy period of time during which Rebecca contributed her time and efforts to the farming operation. The trial court recognized that rehabilitative alimony was necessary for Rebecca to secure employment beyond the minimum-wage level. The trial court also reasoned that such an award was not only justifiable, but also beneficial to the parties' children in the long run. These factors alone, however, are not determinant of an appropriate alimony award. In order to determine whether the trial court abused its discretion in awarding alimony, this court reviews the award of alimony and property division together. *Baltzer,* 422 N.W.2d at 587; *Booth v. Booth,* 354 N.W.2d 924, 927 (S.D.1984). An appropriate, meaningful evaluation regarding the trial court's awarding rehabilitative alimony in the present case is precluded by the aforementioned miscalculations in personal property values and division of marital assets. Therefore, we also remand this issue to the trial court, making no decision as to whether the rehabilitative alimony award is either excessive or insufficient.

## 4. CHILD SUPPORT

 Rebecca claims that the trial court abused its discretion in requiring Roger to pay only $500 per month in child support. She argues that the trial court's award of child support was insufficient because it erred in determining Roger's income.

SDCL 25–7–7 provides, in pertinent part:

The child support obligation shall be established in accordance with the obligor's net income and number of children affected by an action of the obligee or the department, as provided in the following schedule and guidelines:

\* \* \* \* \* \*

The obligor's monthly net income shall be determined by his gross income less allowable deductions, as set forth herein.

This statute provides guidelines for establishing an obligor's child support obligation. These guidelines are mandatory if the obligor's monthly net income does not exceed $1500. *Havens v. Henning*, 418 N.W.2d 311, 312 (S.D.1988). Under SDCL 25–7–7, the support obligation for two children where the obligor's monthly net income was $1401 to $1500 would be $462 to $495. If the obligor's monthly net income exceeds $1500, the trial court must exercise its discretion in setting the child support obligation. *Havens*, 418 N.W.2d at 312.

■ After reviewing the parties income tax returns for the five years preceding the divorce, the trial court found their average net income to be $23,370. The trial court further found that the monthly income from the farm had been "approximately in the range of $1401 to $1500" and that such an income justified child support payments in the amount of $250 per child per month.

At trial, Rebecca testified that the parties' disposable income was in excess of $30,000 in 1985. She also presented evidence, through the testimony of a certified public accountant (CPA), that their average disposable income for the five-year period prior to the divorce was approximately $36,000. The CPA arrived at these figures essentially by subtracting only the actual cash expenditures from the gross income figures. An expense such as depreciation was not taken into account since this would distort the figure representing cash which was available for "non-business" purposes.

We note that for purposes of determining child support, SDCL 25–7–7 permits the trial court to *"allow or disallow* deductions for federal income taxation purposes which do not require the expenditure of cash, including, but not limited to, depreciation, depletion allowances, investment credits...."* (Emphasis supplied). Disallowing such deductions would be in accordance with Rebecca's calculations.

In the present case, we are unable to determine how the trial court arrived at its child support award. Our scrutiny of the parties' income tax returns for the five years preceding the divorce leads us to average net income figures which differ from that of the trial court. According to our calculations, the parties' average adjusted gross income totalled $21,471. Our calculations further indicate that the parties' average net "disposable" income was $34,965. We arrived at this figure by subtracting from the parties' adjusted gross income the taxes paid and by disallowing depreciation expenses and investment tax credits. *See* SDCL 25–7–7. Regardless of which average net income figure is used, it is apparent that the amount of the child support award was within the trial court's discretion, as long as the award was not less than the amount provided at the $1500 range in SDCL 25–7–7. The trial court's award of child support was slightly above said amount. Nonetheless, we believe that it is necessary to remand this issue to the trial court for reconsideration and clarification. In light of our remanding the other issues presented on appeal, we do not believe that this will be overly burdensome to the trial court.

### 5. ATTORNEY FEES ON APPEAL

■ Rebecca has filed a motion for additional costs and attorney fees for bringing this appeal, which is supported by an affidavit and itemized statement. *See Baltzer*, 422 N.W.2d at 589. The amount of the statement is $2550.07. In *Senger v. Senger*, 308 N.W.2d 395 (S.D.1981), we outlined the factors to be considered in awarding a party attorney fees on appeal. We stated:

> In determining whether one party should be required to pay another party's attorney fees, we will consider the property owned by each party; their relative incomes; whether the requesting party's property is in fixed or liquid assets; and whether either party unreasonably increased the time spent on the case.

*Id.* at 398. Applying these factors to the present case, we approve the amount of $1500.

The errors and lack of clarity in the portions of the trial court's decision regarding property valuation and division, alimony, and child support prevent an appropriate, meaningful review of those issues. *See Wilson*, 434 N.W.2d at 744. Accord-

ingly, we reverse the divorce decree with regard to those issues and request the trial court to reconsider them based upon the evidence already submitted. We affirm the trial court's decision regarding the valuation of the parties' real estate.

MORGAN, SABERS and MILLER, JJ., concur.

HENDERSON, J., specially concurs in part and dissents in part.

HENDERSON, Justice (specially concurring in part, dissenting in part).

Via a remand, this case will be redecided by the trial court, who heard all of the evidence, without benefit of taking new evidence. To a very limited extent, I agree with the remand.

### I.

Reviewing this case, it becomes very apparent that the trial judge made an equitable decision and that he should, substantively and spiritually, be affirmed, with the exception of an error in the valuation of some personal property. The majority opinion finds no error in the valuation of real property. Therefore, some discrepancies in bank accounts and insurance policies must be reexamined as well as the value of certain grain. In my opinion, although this might change the figures, it does not trigger a broad reshifting of an award of assets. A valuation of marital assets might well produce different arithmetic but it does not destroy a well-founded judicial conceptualization of an award to each party. Obviously, the trial court must redetermine value of personal property incorrectly evaluated, but it does not have to reevaluate every item of personal property which was correctly evaluated. There is no reason to march the troops up the hill to again march them down.

Therefore, I perceive the role of the trial judge, insofar as an award of marital assets is concerned, to be minor, as distinguished from major, legal surgery. Essentially, I am specially concurring on Issues I and II in the majority opinion, expressing that there has been no abuse of discretion; rather, there are some technical computations to be made. Appellant would have us reach for abuse of discretion in the award, and it is simply not there. *Booth v. Booth,* 354 N.W.2d 924, 927 (S.D.1984).

### II.

There has been no abuse of discretion by the trial court on rehabilitative alimony. It is noted by this writer that the majority attributes the trial judge with careful consideration in awarding rehabilitative alimony. Although the majority opinion takes no position on the rehabilitative alimony award as being "excessive or insufficient," I do. An award of $400 per month for a period of three years under the circumstances of this case * is no abuse of discretion. Such an award amounts to $14,400 in three years. It appears that the trial judge adequately considered all factors in deciding an amount of rehabilitative alimony and a period of years. I specially concur on rehabilitative alimony to additionally express that Rebecca has a far better education than Roger. She deserted the Presho family farmhold to go to Pierre, our State capital. She has excellent health, and is competent to earn a good living, both as an employee for the State of South Dakota or in private enterprise. She can further enhance her vocational skills which are now marketable. The trial judge generously helped her in this regard and the limited mistakes in personal property evaluations should not trigger a new conceptualization. True, the alimony must be considered together with the property award. *Krage v. Krage,* 329 N.W.2d 878 (S.D.1983). How-

---

* She has worked in the State Library in the State capital and a banking institution. Father is a farmer. He dropped out of high school in the ninth grade to devote himself to the family farm. His record, his work ethic, is one of working mornings, days, and late nights to make the family farm a producing unit. Per testimony, he had a reputation of being easygoing, nonviolent and loving to his family. She dubbed him, per testimony, a workaholic. Her conduct was tumultuous in the home, and she eventually kicked the windshield out of a pickup. Ultimately, she employed a psychologist, reflecting that she desired to be liberated. She refused marriage counseling and opted for personal counseling with her psychologist.

ever, the errors in the personal property should spawn more cash for the appellant; hence, the trial court could logically consider a diminution in rehabilitative alimony. Nonetheless, the conceptualization on the rehabilitation alimony award is marked by the trial court's "careful consideration" in that respect.

### III.

As to child support, the majority's analysis utilizes an unconstitutionally narrow interpretation of SDCL 25-7-7, particularly where the trial court's child support award is measured against the guidelines provided in that statute. This Court's standard of review of child support awards cannot be so tightly constricted. *See, e.g., Peterson v. Peterson*, 434 N.W.2d 732, 739–41 (S.D.1989) (Henderson, J., concurring in part, concurring in result in part); *Feltman v. Feltman*, 434 N.W.2d 590, 593–94 (S.D.1989) (Henderson, J., dissenting); *Donohue v. Getman*, 432 N.W.2d 281, 283–85 (S.D.1988) (Henderson, J., specially concurring); *Bruning v. Jeffries*, 422 N.W.2d 579, 582–84 (S.D.1988) (Henderson, J., concurring in result). Such guidelines should be just that, guidelines. *Tesch v. Tesch*, 399 N.W.2d 880, 884 (S.D.1987). There was no abuse of discretion in the child support award. It appears the trial court carefully considered the average net income of these parties, and based the child support on that income. I would not require the trial judge to jump through a depreciation or C.P.A. hoop when his decision makes sense in the first instance. The abuse of discretion test (old settled caselaw) was not abolished by the child support guidelines, *Bruning, supra*. Therefore, I would not remand the child support award on that issue.