Delores V. HERNDON, Plaintiff
and Appellee,

v.

Donald L. HERNDON, Defendant
and Appellant.

No. 13052.

Supreme Court of South Dakota.

Considered on Briefs March 20, 1981.

Decided May 20, 1981.

Edward J. Leahy of May, Johnson, Doyle & Becker, P. C., Sioux Falls, for plaintiff and appellee.

John L. Wilds, Sioux Falls, for defendant and appellant.

WUEST, Circuit Judge.

This is an appeal from an order denying a reduction in child support payments and termination of alimony. We affirm.

The parties hereto were divorced in 1973 after seventeen years of marriage. There is no transcript of the original trial or any findings of fact and conclusions of law inasmuch as they were waived. It does appear that neither party had much property when they were married. After the marriage, appellant finished his training as a chiropractor and commenced a practice which he maintained with the help of appellee until the divorce. They accumulated property worth $200,000, which the trial court divided nearly equally. The decree further awarded appellee custody of the two sons with child support payments of $250 per child per month, and the additional sum of $600 per month for alimony. In addition, the court ordered a college trust fund of $20,000 per child, which was established. Appellee contributed $26,000 to the trust fund, and appellant contributed $14,000. In 1974 appellant applied for a termination of

alimony and reduction in child support. The reduction in alimony was denied; however, the child support for the oldest boy was eliminated because he had married. In 1976 appellant again applied for a termination of alimony and a reduction in child support. Appellant asserted as changed circumstances for termination of alimony and reduction in child support payments appellee's employment income; appreciation of the assets awarded to appellee by the divorce decree; appellant's reduction in income; and appellant's health problems involving the use of his hands.

Appellant has severe osteoarthritic changes at the base of both thumbs at the metacarpal trapezoidal joint which is aggravated by his profession, in which he has to do a great deal of manipulation and massage. The thumbs remain swollen and his work causes increasing pain. X rays show that there has been loss of cartilage so that bone is rubbing on bone at the base of both thumbs. His physician has recommended fusion or locking the joint at the base of the thumb on each hand with two pins, and the building of a bone bridge with bone from another part of the body. This surgery would disable appellant from his profession for at least a year. This condition was urged as a changed circumstance at the 1974 hearing, the 1976 hearing, and at the last hearing now on appeal. As a result of the 1976 hearing, the court reduced the alimony payments to $250 per month but left the child support payment at $250. Neither party appealed.

As changed circumstances since the 1976 hearing, appellant has alleged appreciation of appellee's property awarded in the divorce decree; rental income of appellee's property and employment income of appellee; reduction of appellant's income; and sale of appellant's practice due to the condition of his hands. Appellant now lives in Arizona and no longer practices, although he has Arizona and California licenses. Evidence introduced at the most recent hearing established that there was no change in the condition of appellant's hands since 1974. Appellant maintained his practice until 1979, when it was sold.

The trial court held that there had not been a sufficient change of circumstances since 1976 to justify a reduction in support payments and termination of alimony. This Court has consistently held that there must be a change of circumstances to justify a change in alimony and child support payments. *Blare v. Blare*, 302 N.W.2d 787 (S.D.1981); *Guindon v. Guindon*, 256 N.W.2d 894 (S.D.1977); *Jameson v. Jameson*, 90 S.D. 179, 239 N.W.2d 5 (1976). This Court does not sit as a trier of fact and will not disturb the decision of the trial court on questions of alimony and child support unless there is an abuse of discretion. *Stenberg v. Stenberg*, 90 S.D. 229, 240 N.W.2d 100 (S.D.1976); *Guindon v. Guindon*, supra.

The term "abuse of discretion" refers to "a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Root v. Bingham*, 26 S.D. 118, 120, 128 N.W. 132, 133 (1910), quoting from *Murray v. Buell*, 74 Wis. 14, 41 N.W. 1010 (1889).

Applying these principles to the case at bar, we are unable to say that the trial court abused its discretion. The condition of appellant's hands has remained unchanged since the hearings in 1974 and 1976. It is true that appellee's property has appreciated since 1976, but this has resulted largely through inflation, which has also affected the cost of rearing appellant's son. It is true that appellant has sold his practice and that he is not presently practicing his profession, resulting in reduced income; however, appellant has Arizona and California licenses, and there was some testimony that he may re-establish a practice in Sioux Falls. A person cannot voluntarily reduce his income in order to avoid alimony and support payments. *Simmons v. Simmons*, 67 S.D. 145, 290 N.W. 319 (1940). The evidence in this case does not show that appellant is unable to maintain a practice; to the contrary, it shows that appellant did continue practicing from 1974 until 1979.

The order is affirmed. Appellee's motion for attorney fees and costs is denied.

WOLLMAN, C. J., and MORGAN and FOSHEIM, JJ., concur.

HENDERSON, J., dissents.

WUEST, Circuit Judge, sitting for DUNN, Justice, disqualified.

HENDERSON, Justice (concurring in part, dissenting in part).

I would reverse the trial court's order denying appellant a reduction in alimony. A review of the economic posture of the respective parties clearly indicates that appellee is not a needy recipient of alimony. On the contrary, her monetary status greatly exceeds that of her ex-husband.

First, as the trial court noted, appellant has experienced a "drastic reduction" in income since the 1976 proceedings. This reduction was caused by the necessity of appellant selling his chiropractic practice due to the chronically severe crippling of his hands. Appellant's present income consists of $828 per month from payments received on realty which appellant was forced to sell to support himself, his estranged wife and their child. Appellant also receives $551 as monthly accrued interest on savings accumulated during the years he was able to practice his profession. Between October of 1979 and October of 1980, appellant received one-third of the fees collected from his former patients through the chiropractor who purchased his practice. Currently, appellant is not a practicing chiropractor and, due to the arthritic condition of his hands, appears to have reached the end of his professional career.

In its correspondence to the parties' attorneys in December of 1979, the trial court stated that "it appears [appellant's] income level has dropped below $3,000 per month—and on the most conservative basis may have dropped below $2,000 per month. That is a substantial change in circumstances from 1976." I agree that a substantial change in circumstances has occurred since 1976, and point out that a mere change in circumstances is sufficient for a modification of alimony to occur. *Blare v. Blare*, 302 N.W.2d 787 (S.D.1981).

It is true, as the majority points out, that surgery might alleviate much of appellant's discomfort and possibly enable him to resume his chiropractic practice. I find it hard to fathom, however, the "voluntary" nature of appellant's income reduction. Agreed, appellant apparently does not wish to undergo the rather complex surgical procedure and resulting year of incapacitation. But does appellant's decision not to have surgery at the age of sixty necessarily mean he "voluntarily" reduced his income? Did appellant "voluntarily" cause the joints in his trained hands to swell-up, thereby inflicting upon himself such pain that work became a painful daily exercise in his profession? The answer to these questions is an obvious "no."

It is absurd to believe that appellant would avoid surgery merely to reduce his income, thereby possibly reducing his alimony obligation. This Court long ago concluded that the ability of the alimony obligor to pay is a paramount consideration in determining whether alimony obligations should be reduced. *Vert v. Vert*, 3 S.D. 619, 54 N.W. 655 (1893). "The fact that the husband has suffered a serious impairment of health or physical condition ... since the entry of a decree for alimony or maintenance may authorize a reduction, suspension, or termination of alimony payments where his condition affects his ability to pay." Annot. 18 A.L.R.2d 45 (1951). *See also Silver v. Silver*, 269 Ala. 517, 113 So.2d 921 (1959); *Lewis v. Lewis*, 213 Ark. 262, 209 S.W.2d 874 (1948); *Martin v. Martin*, 79 Cal.App.2d 409, 179 P.2d 655 (1947); *Berkowitz v. Berkowitz*, 239 Ga. 1, 236 S.E.2d 7 (1977); *Bulmer v. Bulmer*, 28 Ill.App.3d 406, 328 N.E.2d 622 (1975); *Siders v. Siders*, 227 Iowa 764, 288 N.W. 909 (1939); *Slagle v. Slagle*, 205 La. 694, 17 So.2d 923 (1944); *Altenbach v. Altenbach*, 162 S.W.2d 361 (Mo.App.1942); 24 Am.Jur.2d Divorce and Separation § 678 (1966). It is unconscionable to require appellant to ply his profession with proficiency and pain (bone rubbing on bone) so as to enable appellee to enrich her already comfortable economic status.

Coupled with appellant's decreased ability to provide alimony is the fact that appellee cannot realistically be said to *require* alimony. Appellee is currently employed and grossing approximately $14,560 annually. Furthermore, she owns $209,306 worth of assets, including certificates of deposit which alone total over $100,000. At the hearing on the motion for modification, appellee testified that it cost her $8,336 per year to raise and adequately provide for the parties' son. When appellee's own income is added to appellant's child support obligation of $250 per month, appellee's yearly income comes to $17,560. It is significant that this total does not entail any interest and/or earnings accrued from appellee's stock, certificates of deposit, rental income, savings, or mutual funds. The record simply does not reflect that appellee needs alimony.

As the trial court stated, appellee's income and capital assets have increased since 1976. The trial court also pointed out, however, that inflation has offset this increase. If this be true, would not the same inflationary factors have even more severely eroded appellant's income, in light of the fact that appellant's income had decreased, not increased, over the same period of time? The answer is clearly a resounding "yes."

As I have recently expressed, the economic need of an alimony recipient must be considered when reviewing the equity of such an award. *Lanphear v. Lanphear*, 303 N.W.2d 576 (S.D.1981) (Henderson, Justice, concurring in part, dissenting in part); *Herrboldt v. Herrboldt*, 303 N.W.2d 571 (S.D.1981) (Henderson, Justice, dissenting). "The fact that the wife has acquired a substantial amount of property, or that her property has increased in value, after the entry of a decree for alimony or maintenance is an important consideration in determining whether and to what extent the decree should be modified." Annot. 18 A.L.R.2d 74 (1951). *See also Hornbaker v. Hornbaker*, 25 Ariz.App. 577, 545 P.2d 425 (1976); *Brady v. Brady*, 94 Cal.App.2d 1, 210 P.2d 69 (1949); *Anderson v. Anderson*, 333 So.2d 484 (Fla.App.1976); *Broday v. Broday*, 43 Ill.App.3d 628, 2 Ill.Dec. 151, 357 N.E.2d 128 (1976); *Loyacano v. Loyacano*, 358 So.2d 304 (La.1978); *Eaton v. Eaton*, 237 S.W. 896 (Mo.App.1922); *Sayland v. Sayland*, 267 N.C. 378, 148 S.E.2d 218 (1966); *Lines v. Lines*, 69 S.D. 299, 9 N.W.2d 705 (1943).

In conclusion, I must agree with the Kentucky Court of Appeals when it stated that "[t]heoretically, alimony or maintenance is based in part on a consideration of the needs of the parties as well as their respective abilities to meet them." *Gann v. Gann*, 347 S.W.2d 540, 542 (Ky.App.1961). Applying this basic theory of equity to the particulars of this case, leads me to the inevitable conclusion that the trial court abused its discretion when it denied appellant's motion for a termination of alimony.