**Ruth W. PENGRA, Plaintiff and Appellant,**

v.

**Robert M. PENGRA, Defendant and Appellee.**

No. 15919.

Supreme Court of South Dakota.

Considered on Briefs March 23, 1988.

Decided Oct. 5, 1988.

Lewayne M. Erickson of Erickson & Helsper, Brookings, for plaintiff and appellant.

Ronald C. Aho of Aho & Bradshaw, Brookings, for defendant and appellee.

MORGAN, Justice.

This is an appeal from modification of alimony payments in favor of defendant and appellee Robert M. Pengra (Robert) and against plaintiff and appellant Ruth W. Pengra (Ruth). We affirm in part and reverse and remand in part.

The parties herein were divorced on October 12, 1983, after thirty-two years of marriage. Three children, born of the marriage, were over eighteen years of age at the time of the divorce. A divorce was granted to Ruth and the decree awarded her alimony at the rate of $725 per month, pursuant to stipulation and agreement of the parties which was incorporated into the judgment and decree. In September, 1986, Robert sought a reduction in alimony based initially on an alleged reduction in his earnings and by supplemental affidavit, based on Ruth's alleged increased earnings.

The stipulation and agreement detailed the circumstances of the parties at the time when the agreement was entered into thus:

The plaintiff, RUTH W. PENGRA, is 52 years of age, has completed 3 years of college ... in 1952 ... at the present time, self-employed in a business known as "Earth Fibres" from which she derives a *net* income of approximately $3,600.00 per year. The plaintiff's employment opportunities are limited due to several physical problems, such as a brittle bone condition, Osteoporsis (sic), Arthritis and a hearing loss.... (Emphasis added.)

The defendant, ROBERT M. PENGRA, is an able-bodied man of 57 years of age, who is not under the care of a doctor for any physical problems ... who is employed as a full professor of Microbiology at South Dakota State University, whose salary from such employment is a *gross* of $34,569.00 payable over a 12 month period, ... and who is capable of supporting himself and contributing to the support of the plaintiff herein.... (Emphasis added.)

The parties hereto agree that the monthly expenses of the plaintiff total in the area of $1,380.00, minimum....

Robert initially sought a reduction in alimony based on an alleged reduction in income of eighteen percent, occasioned by his election to have his employment changed from a twelve-month to a nine-month period. In this regard, he relied on a provision of the stipulation and agreement which provided:

... Defendant will regard any *significant* change in his earned income as a material and substantial change in circumstances and will seek to have the alimony figure reduced in proportion to the reduction in earned income. (Emphasis added.)

Robert supplemented his application for modification by asserting that Ruth's income had increased, partially attributable to a decrease in monthly business expenses. Ruth's responsive affidavit denied that she had experienced an increase in *net* income. She further alleged that Robert had failed to reveal to the court that he had additional gross income of some $6,378 from preaching, interest and principal payments on a contract for deed. She further asked for an award of her attorney fees incurred in the proceedings.

On appeal Ruth raises two issues involving abuse of discretion by the trial court: the first being the reduction of Robert's alimony payments in response to his showing and the concomitant failure to raise them in response to her showing; the second being the failure to award her attorney fees. At the outset we note that the hearing on the motions was not transcribed. Our review is necessarily confined to the pleadings, the affidavits of the parties, and the attachments thereto.

To justify a modification of alimony payments, there must be a change of circumstances. *Wilson v. Wilson,* 399 N.W.2d 890 (S.D.1987); *Lampert v. Lampert,* 388 N.W.2d 899 (S.D.1986); *Wegner v. Wegner,* 391 N.W.2d 690 (S.D.1986); *Moller v. Moller,* 356 N.W.2d 909 (S.D.1984); *Herndon v. Herndon,* 305 N.W.2d 917 (S.D.1981). The burden of proving a change in circumstances sufficient to justify modification of an alimony award is upon the party seeking modification. *Wegner, supra. See also*

*Wilson, supra; Lampert, supra; Rousseau v. Gesinger,* 330 N.W.2d 522 (S.D. 1983). This court will not disturb the decision of a trial court regarding modification of alimony unless there is an abuse of discretion. *Wilson, supra; Lampert, supra; Wegner, supra; Moller, supra; Herndon, supra.*

In the findings of fact and conclusions of law, the trial court found, in substance, that: (1) Robert's income had not changed substantially during the period between the divorce and the application for modification; and (2) Ruth's income had increased during that same period. We will first examine the finding regarding Robert's income.

■ Although Robert initiated the proceeding alleging a substantial decrease in income, he does not ask for review on that issue. Ruth, on the other hand, does. After review of the record, we cannot find any clear abuse of discretion by the trial court on this issue. Ruth claims that Robert's application does not disclose certain preaching stipends, interest income and principal and interest payments on a contract for deed. First, the record does not disclose the source of these principal and interest payments. They may be from the sale of the residential property deeded to Robert under the property division, and for which Ruth received a payment of her share of the equity. However, this is not clear from the record. Additionally, we are unable to determine from this record whether the preaching stipends were being received by Robert at the time of the divorce. Absent a showing to the contrary on the record, we must assume that the trial court acted correctly. Therefore, we affirm the trial court with regard to its finding that Robert's income had not changed substantially.

■ The trial court went on to find, however, that Ruth's 1985 income was substantially more than the $3,600 reflected in the 1983 stipulation and agreement. We disagree with that determination.

The first error the trial court made was to disallow, for computation purposes, an "office in home" deduction from Ruth's $6,324 gross income for 1985. In this regard, it concluded that the failure of Ruth or her attorney to provide it with a monthly statement of her income and expenses would justify its inferring that the home office deduction is not reflected in actual out-of-pocket payments. We find this reasoning to be unpersuasive. The trial court was trying to compare a *net* income figure of approximately $3,600 per year in the 1983 agreement with an *unadjusted gross* income figure which it had arrived at.

Next, the trial court compounded the error when it added $2,053 tax-exempt income shown on the return to arrive at the unadjusted gross income in excess of $8,900, exclusive of alimony. The tax-exempt income was realized on investment of cash assets given to Ruth by her parents. The stipulation and agreement specifically provided, with respect to that gift:

> ... It is specifically agreed that not included in Exhibit "2" are cash assets held by plaintiff which were a gift from her parents and defendant's retirement account at South Dakota State University. The distribution has accounted for those omissions and neither party makes claim on the other for those sums.

From our reading of the stipulation and agreement, the income from the gift is exempt from consideration for alimony purposes, just as the increase in Robert's retirement account would be.

Robert apparently wants us to redraft the 1983 agreement to reflect that the alimony agreed upon was partially based on Ruth's gross, rather than net, income and on the parental-gift property. He does not suggest, however, that we consider his retirement account for alimony purposes. In *Moller,* we said, "we will not put trial courts in the position of relieving parties of an initial bad bargain, nor look behind the original decree on an appeal of a modification decision." 356 N.W.2d at 911–12; *Jameson v. Jameson,* 90 S.D. 179, 239 N.W.2d 5 (1976). In view of the fact that both parties were represented at the time of the drafting and execution of the stipulation and agreement, we can only assume that it was the parties' intention to consider

only Ruth's net income, while considering Robert's gross income, based on Ruth's physical incapacity to ever achieve financial independence. We find that the trial court abused its discretion in amending the alimony provision of the divorce decree and we reverse and remand for restoration of the original decree provision.

██ Ruth further appeals the trial court's summary denial of a requested award of attorney fees. The trial court merely ruled that both parties "will be responsible for their own attorney fees incurred in connection with this matter." Although the determination of whether to award attorney fees is in the sound discretion of the trial court and we will not disturb such decision unless there appears to be an abuse of discretion, *Garnos v. Garnos*, 376 N.W.2d 571 (S.D.1985); *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979), the trial court must take into consideration certain factors in making this determination. *Garnos, supra; Holforty v. Holforty*, 272 N.W.2d 810 (S.D.1978); *Jameson, supra.* The record here does not indicate what, if any, factors the trial court considered, leaving this court with nothing to review. We reverse and remand for a redetermination of this issue.

Finally, Ruth has moved this court for an award of attorney fees on appeal in accord with *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). Upon review of her application, we allow the sum of $1,500 attorney fees, plus sales tax and such other costs as are taxable by the clerk of this court.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

WUEST, C.J., and SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part, dissenting in part).

I concur in that part of the opinion which affirms the trial court. I dissent to that part of the opinion which reverses the trial court.

Relief requested by the appellee, Robert M. Pengra, was to reduce an alimony payment; having considered the record, and conducted hearings (of which we do not have fully before us), the trial court reduced the alimony from $725 per month to $594.50 per month. This is a diminution in alimony of $130.50 and this case has spawned another alimony appeal to this Court. *See* dissent of this writer in *Bradeen v. Bradeen*, 430 N.W.2d 87, 90, (S.D.1988) for the continued proliferation of alimony appeals to this Court. Trial court decided, exercising its discretion, that each party should be responsible for their own attorneys fees. Note, in the majority opinion, that we did not have a record transcribed on the hearings below. Therefore, this Court should especially put its faith in the trial judge's observation of the parties in court and their statements, under oath or otherwise, rather than to second-guess the trial court. Appellant, Ruth W. Pengra, who prevails in this appeal, owed a duty, under the settled law of this state, to come before the Supreme Court of this state with a full record. She did not. *See State v. Jones*, 416 N.W.2d 875, 878 (S.D.1987).

This Court has decried fine-tuning property awards. *See Michael v. Michael*, 287 N.W.2d 98, 100 (S.D.1980). Should this holding not likewise apply to alimony? If it does not, the deluge of alimony appeals, now confronting us each month, will become a flood which suffocates our academic input in all other cases of import which are presented to this Court. The trial court was apparently disappointed and frustrated that Ruth W. Pengra, appellant, failed to submit a revised statement of monthly expenses which she was asked to furnish. The trial court's memorandum decision mentioned this and an Amended Judgment and Decree of Divorce was filed two days after the memorandum decision. In other words, this alimony recipient refused to obey the trial judge and come clean with her monthly expenses. Appellee's withholding of economic information was revealed by a Supplemental Affidavit in which appellee exposed that appellant

had shielded $4,056 of income as a deduction for maintenance of an "office-in-the-home" and that she had additionally shielded $2,053 as tax-exempt income. This is precisely why she was reticent in providing this information to the trial court, which the trial court had requested in February 1987. The trial court decided that this home office deduction was not an actual out-of-pocket payment; the trial court concluded that her income had increased since the original entry of the Judgment and Decree of Divorce. This was correct. An alimony award may be modified upon a mere change in circumstance. *Wilson v. Wilson*, 399 N.W.2d 890 (S.D.1987).

Historically, this Court has held that it will not disturb an award of alimony unless it clearly appears that the trial court abused its discretion. *Cole v. Cole*, 384 N.W.2d 312 (S.D.1986). Here, we have an incomplete record and yet we decide to hold for the alimony recipient when it was her responsibility to provide a complete record. I see no statement in the majority decision holding that this trial court clearly abused its discretion.

Work. Work. Work to pay alimony when you are middle-aged. Work for it when you grow old. Here, this professor had discussed with his ex-wife, Ruth, that when he grew older, he wanted to reduce his workload. This subject was discussed on several occasions prior to the time that the parties entered into the stipulation concerning alimony. This professor does not challenge that he should pay reasonable alimony. What is reasonable, that is the question. This professor does not dispute that he agreed to take a nine-month versus a twelve-month employment contract. As he attained the age of sixty, he wanted to reduce his workload. That is his business, not the business of the courts. Courts should not be able to tighten the screws on any man as he attains the age of sixty and require him to put in the same type of day as when he was forty or fifty. The findings of fact and conclusions of law are clearly buttressed by the record herein establishing an increase in income of appellant and a callous disregard for the truth in shielding her income to the trial court on her income tax returns.* Appellant, Ruth W. Pengra, never honestly displayed to the court the amount of her disposable income.

With all of the record, representations, conferences, hearings, and exhibits, the trial judge decided that attorneys fees should be awarded to neither party. No abuse of this discretion has been shown. *Gross v. Gross*, 355 N.W.2d 4 (S.D.1984).

---

* Finding of Fact II finds an increase of appellant's income based upon a review of the income tax returns; Finding of Fact III reflects appellant's earned income was $3,600 per year when the parties signed their stipulation on October 11, 1983; Finding of Fact IV reflects for the year, 1985, gross income of $6,324 and a deduction of $4,056 for maintenance of an "office in home" and an ultimate net income of only $463; Finding of Fact V reflects tax-exempt income for the year, 1985, of $2,053, thus when *the office-in-the-home deduction is added to the* exempt interest deduction, appellant would have an unadjusted gross income, exclusive of alimony, in excess of $8,900, which is obviously substantially more than the stipulation of $3,600 in October 1983; Finding of Fact VI reflects that the appellant out and out refused to submit a monthly statement of her income and expenses to provide the court with a present financial condition; therefore, the trial court entered judgment, after entering a memorandum decision. Her delay and deceit is rewarded and, under the state of this record, the decision of the majority is a miscarriage of justice.