**Virginia K. Getman DONOHUE, Plaintiff and Appellant,**

v.

**Richard E. GETMAN, Defendant and Appellee.**

No. 15836.

Supreme Court of South Dakota.

Considered on Briefs Sept. 2, 1988.

Decided Nov. 30, 1988.

Albert C. Jones and Krista H. Clark of Dakota Plains Legal Services, Mission, for plaintiff and appellant.

Richard L. Johnson, Sioux Falls, for defendant and appellee.

MILLER, Justice.

Virginia Getman Donohue appeals from an order which set Richard Getman's child support payments at $120 per month. We reverse.

## FACTS

Richard and Virginia were divorced in 1982. At that time, Richard received physical custody of their three children. Both parties subsequently remarried, and their new spouses either have custody of or pay child support for children from prior marriages.

In 1986 the trial court reexamined the custody situation and awarded sole legal and physical custody of the parties' three children to Virginia. The court denied Virginia's request for child support, finding that Richard did not have the means or ability to make support payments.

Shortly thereafter, Virginia petitioned the trial court for child support based on the guidelines set forth in SDCL 25-7-7, since Richard was receiving worker's compensation and social security disability benefits totalling $1,405.33 per month. The trial court found that Richard is totally disabled within the meaning of worker's compensation and social security law. Richard has a severe degenerative condition of the spine and a herniated disc; as a result, he suffers pain, has occasional blackouts, and is experiencing atrophy of his arms. Richard has undergone surgery at least four times due to these problems, and his present wife cannot work because she must stay at home to take care of him. The trial court also found that the children of Richard's new spouse are experiencing medical problems which will require surgery, and Richard will be obligated to pay those medical bills. The trial court concluded that even though the statutory guidelines would require Richard to pay between $539 and $578 per month in child support (based on a monthly income of $1,405.33), he should pay only $120 per month. The trial court gave the following reasons for its deviation from the guidelines: Richard's medical condition and total disability; his monthly expenses and large

indebtedness; his future medical expenses; his inability to hold any kind of gainful employment; and the medical condition of his stepchildren, which will require further expenditures of money.

## ISSUE

Did the trial court abuse its discretion by deviating from the child support guidelines found at SDCL 25-7-7?

## DECISION

This court will not disturb an award of child support unless it clearly appears that the trial court abused its discretion. *Saint–Pierre v. Saint–Pierre,* 357 N.W.2d 250 (S.D.1984); *Rykhus v. Rykhus,* 319 N.W.2d 167 (S.D.1982). Virginia argues that the trial court abused its discretion when it failed to enter findings with regard to all five factors listed in SDCL 25-7-7 before deviating from the guidelines. Virginia also contends that it was an abuse of discretion to allow expenses from Richard's second family to be used as a reason for deviation from the guidelines. We agree.

SDCL 25-7-7 states in part:

These guidelines shall be used in setting child support. *Deviation from the guidelines may be made only upon the entry of specific findings based upon the following factors:*

(1) Financial condition of the parents, including, but not limited to, income of a new spouse or contribution of a third party to the income or expenses of that parent;

(2) The standard of living of the child;

(3) The age and special needs of the child;

(4) The effect of provisions relating to custody and visitation; or

(5) Child care. (emphasis added)

Very recently, in *Bruning v. Jeffries,* 422 N.W.2d 579 (S.D.1988), we addressed the guidelines set forth in SDCL 25-7-7 and stated:

As the above quoted portion of SDCL 25-7-7 indicates, *there may be no deviation from the guidelines unless there is*

*an entry of specific findings regarding the five listed factors.* The question becomes whether Secretary (and hearing examiner) must consider these factors in every case he hears. We conclude, from a reading of this statute in its entirety, that *the legislature intended that these factors be considered in each proceeding.*

422 N.W.2d at 580. (emphasis added)

■ Here, the trial court entered findings regarding the financial condition of Richard and his second family, but none on the financial condition of Virginia or the other four factors listed in SDCL 25–7–7. We hold that the failure of the trial court to address these factors constitutes an abuse of discretion. The trial courts of this state must consider the totality of both parents' financial condition and the needs of the children, as required by SDCL 25–7–7, before deviating from the statutory guidelines. *Bruning, supra.*

■ Furthermore, it is well settled that a parent's responsibility to support his children is paramount; other debts are secondary. This includes obligations resulting from remarriage. *Brunick v. Brunick,* 405 N.W.2d 633 (S.D.1987). *See also Hrdlicka v. Hrdlicka,* 310 N.W.2d 160 (S.D.1981); *Park v. Park,* 309 N.W.2d 827 (S.D.1981). In this case the trial court failed to address the financial needs of Richard's natural children, while focusing on the needs of Richard's stepchildren by his second marriage and his other debts. The trial court then used the stepchildren's needs as a basis for reducing Richard's support for his natural children. This is contrary to our holdings in *Brunick* and *Park* and constitutes a further abuse of the trial court's discretion.

We therefore reverse the order of the trial court and remand for reconsideration of Richard's child support obligations pursuant to SDCL 25–7–7.

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

Although I agree that $120 per month is inadequate child support, I disagree that the rationale for the reversal should be based upon artificial guidelines established by the State Legislature.

Trial judges, in this state, should not be systematized whereby they are schedule-automatons, *i.e.,* read a schedule, push a button, out comes the answer. Rather, our trial judges should be imbued with discretionary power springing from experience and legal education. They are constitutional officers. S.D. Const. art. V, §§ 1, 3, and 5. As such, this Court has recognized that they are entrusted to be the guardians of children and to protect their welfare. *See Jameson v. Jameson,* 306 N.W.2d 240, 243 (S.D.1981); *Blare v. Blare,* 302 N.W.2d 787, 791–92 (S.D.1981); *Houghton v. Houghton,* 37 S.D. 184, 188–89, 157 N.W. 316, 317 (1916) (children are "wards of the court").

With a total monthly income of $1,405.33, this father should pay more than $120 per month.* A reversal should be premised upon honored precedent in this Court, not an artificial schedule. We should review these facts from this standpoint: Under the facts before us, did the trial court abuse its discretionary power in setting child support at the sum of $120, employing the holding in *Hrdlicka,* found in footnote below? Any discretion exercised must have a sound basis in the evidence presented. *Masek v. Masek,* 89 S.D. 62, 228 N.W. 2d 334 (1975).

In my opinion, the needs of the children were not considered; rather, the court centered its decision on a list of nineteen expenses of his present family plus eleven

---

* Dividing this amount by three children is tantamount to $40 a month. In *Ostwald v. Ostwald,* 331 N.W.2d 64, 67 (S.D.1983), we reversed a $50 per month child support award for two children and drew upon *Hrdlicka v. Hrdlicka,* 310 N.W. 2d 160, 161 (S.D.1981), wherein we reversed a

$40 per month child support award. These reversals were based upon the trial court's abuse of discretion with citations galore for the same proposition involving child support. Old fashioned. Time honored precedent.

existing debts. Also, in Findings of Fact VIII and IX, the trial court rather extensively considered the medical expenses of appellee's second wife and her son, who was to undergo knee surgery. There was a lack of expression by the trial court on its findings on the needs of the very children whose child support was at issue; their ages were 17, 14, and 13. Needs of the children are the most important factor for trial courts in setting a child support obligation. *Hood v. Hood*, 335 N.W.2d 349 (S.D.1983). Thus, under *Hood*, and the other precedent set forth hereinbefore, I would likewise reverse.

Now, having agreed with the majority court's ruling, I wish to express the primary reason for my special concurrence which, essentially, is to attack the nightmare, created in South Dakota, which establishes dollar amounts for minimum and maximum support depending upon income: SDCL 25-7-7. In *Bruning v. Jeffries*, 422 N.W.2d 579, 582 (S.D.1988), this author wrote a concurrence in result which, *inter alia*, attacked the general scheme of creating "mini-judges" in South Dakota. As recently as 1981, citing *Houghton* above, in *Blare v. Blare*, 302 N.W.2d 787, 791–92 (S.D.1981), this Court reflected upon its very special and awesome responsibility for the care and welfare of children. The South Dakota State Legislature saw fit, through the rainbow of federal government dollars offered unto it, to create these "mini-judges" and to further establish these guidelines. In *Bruning*, 422 N.W.2d at 582, recognizing that our courts were getting a double shuffle and being eroded in their constitutional power, I saw fit to diagram, via my concurrence in result, the breakdown of constitutional powers and to decry an unlawful intermixture of judicial administrative power and a violation of the Doctrine of Separation of Powers. S.D. Const. art. II. In said diagram, I drew attention to the Child Support Enforcement Amendments of 1984 (Pub.L. No. 98–378), U.S.Code Cong. & Admin.News 1984, p. 2397, which might well *require* guidelines but permits—tolerates—authorizes guidelines to be created by statute, *judicial action*, or administrative action. This public law, namely a Congressional act of the United States, does not mandate minijudges nor does it require any legislature to establish guidelines. Guidelines, in whatever form, may be established by *judicial action*. Let us, then, in this state on the Plains, recognize that we can, by judicial action, decide how child support may be established. Let not the Legislature tell our state judges how to decide child support cases. Our escutcheon, our integrity, is on the line. Federal government dollars, thrust upon the people of the State of South Dakota, create more "Statism," and are further tentacles emanating from Washington, D.C., to strangle the power of the judiciary of each state in this Republic. The "mini-judge" concept is still unpalatable; these guidelines, enmeshed and intertwined with the "mini-judges," still create an unholy mixture and marriage between the judicial branch and the Department of Social Services, all fashioned by a well-meaning but misdirected Child Support Commission. As I said in *Bruning*, 422 N.W.2d at 583, it is a continuation of a wrongful dejudicialization of the judiciary. Where will amorphous engulfing by the legislative will end?

Rather than to submit the trial judges of this state, or any state, to being schedule-automatons, I would pursue a judicial philosophy of recognizing fundamental law. Organic law. Judges should be imbued with judicial discretionary power springing from experience, clothed with constitutional power, and centered on vibrant blood cells stimulating the brain. Then, when one of these damnable schedules makes no sense, as they do in so many factual situations, the judge can trigger his brain rather than to push a button. His Honor belongs to the judiciary and has the right, belonging to the judiciary, to be a full participant in the Doctrine of Separation of Powers. He or she need not, because the Legislature says so, make decisions affecting the lives of children, and mothers, and fathers, by employing the rigidity of mathematical analysis by percentages; nor need His Honor decide the fate of human beings by sterile, mathematical extrapolation of tables foisted upon him by a new mood swing in Congress sugarcoated with dollars. I question, under *Marbury v. Madison*, 5

U.S. (1 Cranch) 137, 179–80, 2 L.Ed. 60, 74 (1803), whether judicial automatons may be created by a state legislature.

South Dakota's statutory scheme of setting child support by artificial schedules violates the Separation of Powers Doctrine of the United States Constitution. One branch is not permitted to encroach on the domain of another. The United States Constitution is a charter of government derived from the people, and all officers of government must respect it, each branch respecting the other branch's authority. The South Dakota Legislature cannot usurp the discretionary power of the judges of this state wherein and whereby a schedule is implemented in lieu of the mentality of an elected constitutional officer with brains and education.

Lastly, no pretense is made that I am a federal scholar. The Federal Code of Regulations, U.S.Code Annotated, and the multitude of rulings thereunder are a Byzantine maze to my limited mentality. However, I note that Part D of title IV of the Social Security Act was amended by the Child Support Enforcement Amendments of 1984, which added a new section entitled "STATE GUIDELINES FOR CHILD SUPPORT AWARDS," which provides:

SEC. 467. (a) Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the State. The guidelines may be established by law or by judicial or administrative action.

(b) The guidelines established pursuant to subsection (a) shall be made available to all judges and other officials who have the power to determine child support awards within such State, *but need not be binding upon such judges or other officials.*

Child Support Enforcement Amendments of 1984, Pub.L. No. 98–378, § 18, 98 Stat. 1305, 1321–22 (1984) (emphasis added). Further, special writer sayeth not.