A. Thomas Pokela, Sp. Asst. Atty. Gen., Sioux Falls, for plaintiff and appellant.

Robert G. Marmet, of Marmet & Armstrong, Centerville, for defendant and appellee.

**STATE of South Dakota, ex rel. Raymond M. WILCOX, Plaintiff and Appellant,**

v.

**Judy A. STRAND, f/k/a Judy A. Maine, Defendant and Appellee.**

**Nos. 16326, 16345.**

Supreme Court of South Dakota.

Considered on Briefs March 23, 1989.

Decided June 21, 1989.

MORGAN, Justice.

The South Dakota Department of Social Services, Child Support Enforcement Division (Department) appeals from an order denying its request to modify a child support determination between Raymond Wilcox (Raymond) and Judy Strand (Judy). We affirm.

This action appears to be the latest in a series of disputes between the biological parents of a male child (Child) born on August 1, 1978. Litigation began with a hotly contested paternity suit. The result was a determination of Raymond's paternity of Child and the imposition of the result-

ant requirement for support. Shortly thereafter, Raymond sought termination of Judy's parental rights and permanent custody of Child. He also sought to change Child's surname. After trial in that action, Judy was awarded custody subject to Raymond's right to reasonable visitation. In 1982, at Raymond's instigation, Judy signed a stipulation agreeing to permanent custody in Raymond, with reasonable visitation rights in her. It also authorized change of Child's surname. The stipulation further provided that Raymond would be "solely and exclusively financially liable and responsible for the temporal welfare" of Child and that "[Judy] shall owe no child support to [Raymond]." Although the stipulation was filed, it was not presented to the court for approval. Nevertheless, the parties apparently abided by it for several years.

In 1986, however, Raymond petitioned the trial court to require Judy to make child support payments. Judy's response was a request that the court enforce the earlier judgment vesting custody in her. Following an adversarial hearing at which both parties were represented by counsel, the trial court determined that Child's best interests were served by continuing custody with Raymond. The trial court further found that Raymond was financially able to support Child at a high standard of living; that Judy, on the other hand, was a full-time housewife and mother, with no income, and that Judy's financial condition was such that she was unable to make a financial contribution to Child's support beyond that which she made during his visits with her. The trial court denied Raymond's request for child support beyond the requirement that Judy pay the costs of travel for Child's visits with her.

That judgment was entered on September 21, 1987. Almost immediately thereafter, on October 13, 1987, Raymond sought the aid of Department to overturn the judgment. By means of an affidavit signed by a Special Assistant Attorney General, Department secured an order to show cause why Judy should not pay child support. The basis for the order was the allegation in the affidavit that the trial court had violated SDCL 25–7–7. Judy sought dismissal of the order to show cause upon statutory and constitutional grounds. After a hearing, the trial court determined that Department had statutory authority to appear in this matter, SDCL 28–7–17.2, but nevertheless entered an order denying Department's motion.* Department brings this appeal.

■ On appeal, Department raises one issue: Whether SDCL 25–7–7 requires the entry of an order for support in all cases in which the noncustodial parent is capable of obtaining employment but chooses not to? By notice of review, Judy urges the lack of authority for Department to seek modification of child support orders where Department has no financial interest. Department, through the office of the Special Assistant Attorney General did not deign to respond to the notice of review. Since failure of an appellant to properly brief an issue with argument and citation of authority can result in waiver of such issue, *Graham v. State*, 328 N.W.2d 254 (S.D.1982), it might be appropriate to hold that the failure of Department's counsel to respond to the notice of review issues is a concession to their validity and correctness. Because we do not have to reach those issues, we choose not to do so on this occasion.

We strongly suggest, however, that it is not the province of this court to brief the cases for delinquent counsel who are happy to jump into the fray but unwilling to continue to see it out to the end. Nor do we deem it the office of a Special Assistant Attorney General to make a determination that an issue is so frivolous or unlikely to succeed that the issue can merely be ignored. Some aspects of this child support scheme have been called into question on constitutional grounds so that Department and the attorney general are on notice that some doubts do exist.

---

* The trial court judgment provided that, if and when Judy obtained employment, she shall pay child support in accordance with SDCL 25–7–7.

Returning to State's issue on appeal, our standard of review has traditionally been whether the trial court exercised discretion in setting child support obligations. We have refused to disturb child support obligations unless it appears that the trial court has abused its discretion. *Rykhus v. Rykhus*, 319 N.W.2d 167 (S.D.1982). This discretion has centered on the reasonable needs of the child and the obligor's ability to pay. *Gross v. Gross*, 355 N.W.2d 4 (S.D.1984).

In 1984, the legislature enacted the statute providing for minimum child support guidelines, now codified as SDCL 25-7-7. It provides: "The parents of a child are jointly and severally obligated for the necessary maintenance, education and support of the child in accordance with their respective means." In 1986, the legislature made major revisions in child support and added the "Schedule and Guidelines" as we now know them. The amendments were the work product of the South Dakota Commission on Child Support, a commission appointed by the governor, by executive order, to comply with the requirements of federal legislation, the Child Support Enforcement Amendment of 1984. In *Bruning v. Jeffries*, 422 N.W.2d 579, 581 (S.D. 1988), commenting on the enactment of the guidelines and schedule, we stated: "We believe that the enumerated deviations of SDCL 25-7-7 were adopted giving consideration to and with no intent to abolish this settled law[,]" referring to our decision in *Gross, supra.*

■ Department contends that the trial court abused its discretion by not ordering Judy to pay child support in spite of the fact that she was then unemployed, was caring for her children, ages five and three, and her husband was at that time also unemployed. It argues that the trial court may not deviate from the statutory guidelines of SDCL 25-7-7 when a parent, capable of working, voluntarily chooses not to seek employment. In light of the facts in this case, we do not agree.

The deviation factors, five in number, set out in SDCL 25-7-7 are, in pertinent part: (1) Financial condition of the parents; (2) The standard of living of the child; (3) The age and special needs of the child; (4) The effect of provisions relating to custody and visitation; or (5) Child care. The trial court considered the provisions of the statute and deviated from the schedule based upon the factors enumerated therein based upon specific findings as required by *Bruning.*

The trial court found that (1) Raymond and his new spouse earn between $24,600 and $27,600 a year; (2) Judy has no income and her husband earns less than $12,000 a year and (3) Judy has four persons in her household including two small children, while Raymond has three persons in his household, including Child. The trial court also recognized that Judy provides transportation and support for Child when he visits. These findings are clearly supported by the evidence and we find no abuse of discretion on the part of the trial court. We do, however, find a kind of arrogance on the part of counsel for Department in pressing this appeal. It is obvious that he would have the courts apply the statute with the same blind ineptitude that we decried on the part of the hearing examiner in *Bruning, supra.*

Further, we do not believe that the child support enforcement scheme was enacted to give a parent another tool to harass the other parent. When there has been a recent judicial determination, in this case within one month, without any change of circumstances, it would appear to us that Department has sufficient caseload without creating more. We suggest that it apply its efforts to enforcement against parents who have not been adjudicated or who have failed to make the payments previously mandated. The burden on the judicial caseload enhanced by this sort of action and appeal is not appreciated.

We affirm the judgment of the trial court.

SABERS, J., concurs.

HENDERSON, J., concurs with writing.

WUEST, C.J., and MILLER, J., concur in result.

HENDERSON, Justice (concurring).

In concurring, I note, with agreement, the majority's reference to *Bruning v. Jeffries*, 422 N.W.2d 579, 581 (S.D.1988), wherein this Court held that the passage of SDCL 25–7–7 did not abolish settled case law under which child support awards must be based upon the reasonable financial needs of the child and financial means of the parents. Guidelines must be just that, guidelines. They are not to be rigidly or blindly applied. *Tesch v. Tesch*, 399 N.W.2d 880, 884 (S.D.1987). Here, as in *Tesch*, the trial court did not abuse its discretion in fashioning its child support award.

The child support guidelines of SDCL 25–7–7, if interpreted inflexibly, result in unconstitutional "dejudicialization of the judiciary". *See Peterson v. Peterson*, 434 N.W.2d 732, 739–41 (S.D.1989) (Henderson, J., concurring in part, concurring in result in part). The trial judges of this state are not to be reduced to schedule-automatons, *i.e.*, read a schedule, plug in some facts, out comes the answer. *See Peterson, id.*, at 740, *Donohue v. Getman*, 432 N.W.2d 281, 283–5 (S.D.1988) (Henderson, J., specially concurring). Rigid application of SDCL 25–7–7, whereby child support could be reduced to a process of moving a finger on a chart provided by the legislature, would shatter the constitutional doctrine of separation of powers, enshrined in S.D. Constitution, Art. II. Such a result was avoided here, through reference to past precedent. To avoid grave injustices and inequities, a trial court must adjudicate on the realities of the domestic situation before it. *State ex rel. Larsgaard v. Larsgaard*, 298 N.W.2d 381, 384 (S.D.1980).

Recognizing that this is not the occasion to knead the wrinkles out of the statutory cloth woven during the 1989 legislative session, I observe the extensive revision of SDCL Ch. 25–7 contained in 1989 S.D.Sess. L. Ch. 220, effective July 1, 1989 (H.B. 1081). Section 10 of that act provides that deviation from the child support guidelines, if raised by either party, may be made upon entry of specific findings based upon, *inter alia*, "*[a]ny* financial condition of either parent which would make application of the schedule inequitable." (emphasis supplied). This statutory language appears to indicate that the legislature has recognized the necessity for equity in these cases, in derogation of the lockstep mentality disapproved in both the majority's and this author's writings in *Bruning*.

On the basis that the trial court reached an equitable result by exercising its discretion, I concur.

WUEST, Chief Justice (concurring in result).

I concur in the result reached by the majority, but write specially to disassociate myself from the remarks directed at counsel and the Department.

MILLER, Justice (concurring in result).

I agree with the majority's holding, but like the Chief Justice, I specifically disassociate myself from the last three sentences of the concluding paragraph.