**Chrisandra K. SCHMIDT, Plaintiff and Appellant,**

v.

**Richard L. SCHMIDT, Defendant and Appellee.**

Nos. 16456, 16465.

Supreme Court of South Dakota.

Considered on Briefs April 26, 1989.

Decided July 26, 1989.

Sean M. O'Brien of Erickson, Helsper & O'Brien, P.C., Brookings, for plaintiff and appellant.

William J. Ellingson, Flandreau, for defendant and appellee.

SABERS, Justice.

Mother appeals a change in custody of the eldest of three boys to Father. Father appeals the requirement that he pay $250 monthly child support for two boys.

### Facts

Father and Mother were divorced on July 13, 1984. They had three children during the marriage; David, Randy, and Michael. By stipulation, Father and Mother agreed that Mother would receive custody of the three boys. Custody was not contested at the divorce hearing, and Father appeared without counsel. Mother presented evidence in the form of testimony and exhibits. The trial court awarded custody of the three boys to Mother. As provided in the stipulation, Father was ordered to pay $375 monthly child support.[1]

Following the divorce, Father continued to farm near Flandreau, South Dakota. Mother lived in Brookings, South Dakota, where she worked at Minnesota Mining & Manufacturing (3M). On June 3, 1988, Father made a motion to modify the child custody and support provisions in the divorce decree. Father requested custody of the oldest, David, and that all three boys be permitted to reside with him during the summer months. The motion further requested that child support obligations be modified accordingly. A hearing was held on the motion on July 25, 1988.

David was fourteen at the time of the hearing. Father introduced evidence showing that David enjoyed the farm and preferred to live with Father. On the farm, David did chores and repair work on an old car. According to Father's testimony, Randy, age eleven, and Michael, age nine, also enjoyed the farm.

Father introduced evidence that, while in Mother's custody, David had problems in school, including failing grades, numerous days absent, and a three-day suspension from school. He also presented evidence that David had gotten in trouble with the law in a minor incident involving two friends. Father was upset that Mother had not notified him of this incident. Father also introduced evidence that the Flandreau school system had a special program which gave assistance and training similar to the one David was enrolled in at Brookings. Father testified that a neighbor, a substitute teacher in the Flandreau school system, agreed to tutor David to improve his grades.

Mother expressed concern for David's safety on the farm because Father permitted him to operate farm machinery and an unlicensed and uninsured automobile. However, she admitted that she gave no thought to David's operation of a 1000cc Harley Davison on the highway without a motorcycle license. She testified to her belief that Father was unconcerned with

---

**1.** Father missed certain support payments which he claimed was due to sporadic income from the farm. He made the payments following an order to show cause. Following this, the trial court increased Father's monthly child support to $420 pursuant to the child support guidelines in SDCL 25–7–7.

David's education because Father did not finish high school, failed to attend any parent-teachers' conferences or show other interest in David's education. Mother also expressed concern about the effect of separating the three boys.

David testified at the change of custody hearing. He indicated that though he loved both parents and felt both were good parents, he preferred to live with Father. Following this testimony, the trial judge spoke with David alone in chambers where David again expressed a desire to live with Father.

On September 12, 1988, the trial court amended the original divorce decree and gave Father custody of David. The decree was also modified to permit all three boys to live with Father during the summer months, with the exception of three weeks when all three would be with Mother. Father's monthly child support was reduced to $250 and reduced further to $125 during the summer months when all three boys stay with Father. Mother appeals the custody change and denial of attorney fees. Father appeals the amount of child support. We affirm the change of custody and denial of attorney fees and reverse and remand on child support.

### 1. Change of custody.

As a general rule, a parent seeking a change of custody must show 1) a substantial change of circumstances, and 2) that the welfare and best interests of the child require modification. *Mayer v. Mayer*, 397 N.W.2d 638 (S.D.1986); *Kolb v. Kolb*, 324 N.W.2d 279 (S.D.1982); *Masek v. Masek*, 90 S.D. 1, 237 N.W.2d 432 (1976). However, when custody is not contested in the divorce, the party seeking a change of custody is not required to show a substantial change of circumstances. *Mayer, supra; Flint v. Flint*, 334 N.W.2d 680 (S.D.1983); *Kolb, supra; Haskell v. Haskell*, 324 N.W.2d 423 (S.D.1982).

■ Mother argues that custody was contested in the divorce and Father failed to meet his burden for a change of custody. She argues the trial court heard evidence and found that it was in the best interests of the children to grant her custody. She

rejects the claim that custody was based on a stipulation of the parties and argues that no such stipulation exists in the record. In fact, the parties' stipulation regarding custody and other matters appears in the record. Father and Mother agreed that Mother should receive custody, subject to reasonable visitation. Father did not present evidence at the divorce hearing or contest the custody issue. It is clear that the trial court relied on the stipulation as the decree mentions and follows its terms. As stated in *Flint, supra:*

> Since here the parties stipulated that father would have custody of the daughters, the *Kolb* decision removes the element of substantial change of circumstances from the burden of proof. *Kolb, supra.* However, the moving party, ... is left with the burden of showing that the welfare and best interests of the child require modification.

*Id.* at 681.

■ Mother argues that the findings of fact do not establish that the best interests of the child require modification. In part, the findings provide: "there is a need for a closer relationship with David and his father and a need for closer supervision which the Court feels he will get when living and working with his father on the farm" and that "These facts indicate to the Court that a separation from his current friends and acquaintances would be in his best interest."

It is evident that David was having problems while in his mother's custody. Father testified that Mother failed to give adequate supervision and discipline to David and that he planned to rectify this situation. The court apparently believed this testimony in concluding that David needed closer supervision from Father. The court also recognized the bad influence which friends had upon David. The evidence showed that David enjoyed the farm and preferred to live with Father. In addition to David's testimony concerning his preference, the trial judge spoke with David alone in chambers. SDCL 30–27–19 provides that a child's preference is a proper consideration for the court in determining

the child's best interests. The trial court had an opportunity to speak with David and observe the parties at the hearing. We cannot say that the trial court erred in finding that the best interests of the child required modification.

■ Mother also argues that the trial court's findings fail to show compelling reasons to separate David from his brothers. She claims that the two younger boys look up to David and share a very close bond which would be harmed by their separation.

We have held that the best interests of the child require compelling reasons to separate siblings. *Adam v. Adam*, 436 N.W.2d 266 (S.D.1989); *Mayer, supra.* The trial court must make adequate findings which show compelling reasons to split custody of siblings. *Mayer, supra.*

In this case the court found compelling reasons to split custody of the children. The court relied in part on David's preference to live with his father. While *Mayer* states that a child's preference alone may not constitute a compelling reason, there is other evidence supporting the court's finding. As discussed above, the evidence showed David's need for a change from his environment in Brookings. Further, the evidence indicated that split custody would not be harmful to the boys' relationship. David was entering high school in the fall, while his brothers were both in grade school. David testified that the brothers got along but he did not share many activities with his younger brothers. The court may properly consider age differences and different interests in determining whether compelling reasons exist. *Adam, supra.* More importantly, David and his brothers will be within one-half hour of each other and spend the summer months together. The arrangement may provide as much quality time together as before. Unlike *Mayer*, the sibling relationship between David and his brothers will not be completely broken. Under these circumstances, the court did not err in finding compelling reasons to split custody of David and his brothers during the school year. The court did not abuse its discretion in the change of custody.

2. *Mother's attorney fees.*

■ Mother argues that the court erred in summarily denying her attorney fees because the court failed to set forth the factors it considered. She argues that this requires reversal and remand for redetermination of this issue. Mother relies on *Pengra v. Pengra*, 429 N.W.2d 754 (S.D. 1988), which states:

> The record here does not indicate what, if any, factors the trial court considered, leaving this court with nothing to review. We reverse and remand for a redetermination of this issue.

*Id.* at 757. Father argues that Mother failed to introduce evidence to permit the court to evaluate her claim for attorney fees. He claims that the only evidence concerning attorney fees was the net monthly income of the parties, which showed Mother's income was higher than Father's. This is sufficient to distinguish the present case from *Pengra*. In *Pengra*, the trial court denied wife's motion for attorney fees, without stating any reasons, despite the fact that the husband's income was substantially higher. Here, Mother's income exceeds Father's and the court found it equitable for each party to pay their own attorney fees. In addition, we note that Mother was unsuccessful in her resistance to the change of custody.

The trial court has broad discretion in considering factors for an award of attorney fees and we will not reverse unless there is a clear abuse of that discretion. *Pengra, supra; Cole v. Cole*, 384 N.W.2d 312 (S.D.1986); *Garnos v. Garnos*, 376 N.W.2d 571 (S.D.1985); *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979). We find no abuse of discretion and affirm. In consideration of these factors, we also deny Mother's motion for attorney fees on appeal. *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D. 1985).

3. *Child support.*

■ After granting Father custody of David, the court modified Father's monthly child support obligation. The court determined Father's child support under the

guidelines in SDCL 25-7-7 by cancelling out one child with each parent, leaving Mother with an additional child. The court then considered Father's child support for one child under the guidelines. Father's net monthly income at the time of the hearing was $1,250. Accordingly, the court set Father's monthly child support at $250. Father claims this was error. He claims that the court should have compared the amount of child support Father would pay for two children under the guidelines against the amount of child support Mother would pay for one child and subtract the difference to determine Father's support.

■ We agree with Father in part. SDCL 25-7-7 provides that "The child support obligation shall be established in accordance with the obligor's net income and number of children affected[.]" Following the change of custody, Father was obligated to pay support for two children based on his net monthly income of $1,250. Mother was obligated to pay support for one child based on her net monthly income of $1,582. Since Mother's net monthly income exceeded Father's, her child support obligation for one nearly cancels out Father's child support obligation for two under the guidelines.[2] Mother argues that such a formula may lead to absurd results.[3] However, SDCL 25-7-7 does not permit deviation from the guidelines absent specific findings. *Bruning v. Jeffries*, 422 N.W.2d 579 (S.D.1988). Thus, the trial court erred in its calculation of child support. We reverse and remand for the trial court to reconsider child support in accordance with this opinion. We note, however, this may provide inadequate support for the boys. Father's farm occupation provides certain

necessities, such as housing, utilities, transportation, etc. which would otherwise be personal expenses. On remand, the trial court may look to the record and make additional specific findings which may support deviations from the child support guidelines and provide adequate support.

Affirmed in part, reversed and remanded in part.

WUEST, C.J., and MORGAN, J., concur.

MILLER, J., specially concurs.

HENDERSON, J., concurs in part, concurs in result in part, and dissents in part.

MILLER, Justice (concurring specially).

I specifically concur with the majority on issues (1), and (3). I merely concur in the result on issue (2) because I feel that the trial court should have specifically articulated the factors it considered in denying attorney fees.

HENDERSON, Justice (concurring in part, concurring in result in part, dissenting in part).

### I. CHILD CUSTODY

On the change of custody issue, I concur in result. The *Kolb* decision is one that I have never agreed with and have so stated in writing. *See, e.g., Mayer v. Mayer*, 397 N.W.2d 638, 645-46 (S.D.1986) (Henderson, J., specially concurring); *Kolb*, 324 N.W.2d 279, 284-87 (Henderson, J., concurring in part, dissenting in part). There is little need to burden the reader with my previous rationale.

> However, if the father were to gain custody of one child he would no longer pay any child support for the four children in mother's custody. In fact, the mother would be required to pay $20 per month for support of the one child in the father's custody. While such a result appears inequitable, such a result *is* required under the current guidelines in the absence of specific findings supporting deviations. In this context, it is important to note that the guidelines in SDCL 25-7-7 have been replaced with new guidelines effective July 1, 1989.

**2.** Under the guidelines, Father's obligation for two children with his net monthly income of $1,250 would be between $360 to $390 monthly. Mother's obligation for one child with her net monthly income of $1,582 would be at least $330 monthly. Subtracting the difference, Father would owe child support of approximately $30 to $60 monthly.

**3.** Assume a mother with custody of five children and a net monthly income of $1,500, and father with a net monthly income of $1,000. Father would pay approximately $350 per month child support to the mother under the guidelines.

372

## II. ATTORNEY'S FEES

I concur.

## III. CHILD SUPPORT

As one peruses and ponders upon the majority's child support dissertation, one fancies a trip with Alice through Wonderland. Wonderland is the world of child support, resulting from this State's charting a course, thrusting rigidity upon trial courts, in an effort to follow the United States Congress, which required no such mandated rigidity.[1] The rigidity of the guidelines turns logic on its head.

In the past I have sought, through numerous writings, to academically advance that judges cannot decide child support by formulas and tables. When tables are used, judgment flees. As I have written in the past, judges are not "schedule-automatons." *Peterson v. Peterson*, 434 N.W.2d 732, 739–741 (S.D.1989) (Henderson, J., concurring in part, concurring in result in part). In my previous writings, I have argued that the abuse of discretion test is not only the primary but solid scope of review test—not whether the guidelines have or have not been followed in the particular set of facts before the trial judge.[2] We are substituting, with these guidelines and decisions thereunder, at least to date, something of inferior value. If we in the law are substituting a new concept, it should be something of greater value.[3] We should continue to consider the needs of the child, the ability to pay by the parent, and, essentially, the trial judge's abuse or non-abuse of his discretion in setting child support. In doing so, we, in the judiciary, retain our independence; we also vault a known, Equity, forged through the centu-ries in jurisprudence, over an unknown substitute of legislative dogmatism. The hypothesis, posed in the majority's footnote 3, proves the fallacy of rigid guidelines and establishes the validity of various expressions on this subject, collected below, in which I have intended to draw this issue to the attention of this Court, the Bench and Bar, the people of this State, and, perhaps more importantly, the people of this Nation.

## BIBLIOGRAPHY

*Studt v. Studt*, 443 N.W.2d 639, 645–46, handed down July 5, 1989 (Henderson, J., specially concurring in part, dissenting in part) (abuse of discretion is proper standard for child support awards).

*Vellinga v. Vellinga*, 442 N.W.2d 472, 475–77, (Henderson, J., dissenting) (chancery/equity power of courts is not subject to legislative encroachment; autocratic rule by legislative arm is dangerous to constitutional government, quoting *Appeal of Nelson*, 83 S.D. 611, 617, 163 N.W.2d 533, 536 (1967)).

*State ex rel. Wilcox v. Strand*, 442 N.W.2d 256, 259, (Henderson, J., concurring) (1989 Legislative revisions of SDCL ch. 25–7 reject, in part, "lockstep mentality" fostered by rigid guidelines). *Compare* the disparagement of "mechanical jurisprudence" by Roscoe Pound in his treatise on *Mechanical Jurisprudence*." 8 Col.L.Rev. 605, 605–08, 613, 620–21 (1908).

*Peterson v. Peterson*, 434 N.W.2d 732, 739–41 (S.D.1989) (Henderson, J., concurring in part, concurring in result in part) (judicial discretion, springing from experience, is necessary to decide human fate, not sterile guidelines).

1. There are those who would dare to retain a semblance of independence in the jurisdiction of the states. *See Donohue v. Getman*, 432 N.W.2d 281, 283–85 (S.D.1988) (Henderson, J., specially concurring). Note concluding paragraph therein calling the reader's attention to the relevant federal statute.

2. The abuse of discretion test (old settled caselaw in this State) was not abolished by child support guidelines. *Bruning v. Jeffries*, 422 N.W.2d 579 (S.D.1988).

3. As Robert Ruark noted in his great novel, "Something of Value," the Basuto tribe of South Africa has a proverb: "If a man does away with his traditional way of living and throws away his good customs, he had better first make certain he has something of value to replace them." See *Kolb, supra*, at 286–7 (Henderson, J., concurring in part, dissenting in part).

*Feltman v. Feltman*, 434 N.W.2d 590, 593–94 (S.D.1989) (Henderson, J., dissenting) (Should we weep for children of a second marriage at their birth, not at their death? Held: Children of a second marriage are not on an equal par with children of a first marriage.).

*Donohue v. Getman*, 432 N.W.2d 281, 283–85 (S.D.1988) (Henderson, J., specially concurring) (federal dollars inspired these guidelines, yet federal law does not call for elimination of judicial discretion). *Sharp v. Sharp*, 422 N.W.2d 443, 448–49 (S.D.1988) (Henderson, J., dissenting) (separation of powers denies administrative "mini-judges" legitimacy—legislature created unconstitutional jurisdictional maze, as demonstrated in *Sarver v. Dathe*, 439 N.W.2d 548 (S.D.1989) (majority opinion)—Note: "Mini-judge" statutes have since been repealed by 1989 Legislature).

*Bruning v. Jeffries*, 422 N.W.2d 579, 582–84 (S.D.1988) (Henderson, J., concurring in result) ("mini-judges" represent dejudicialization of the judiciary).

Presently, the states are in fear so the guidelines are born. In time, this mechanical jurisprudence shall disappear because of its despisement by those who are called upon to administer them. A bond, now established to create these guidelines, is created by a chain of governmental obligation. Fear is the cement which holds the chain unbroken. Unquestionably, many prisoners of this chain will be held captive until reason and courage overcome fear and fad.

As this author noted in *Donohue*, at 284–5, the federal Child Support Enforcement Amendments of 1984 (Pub.L. No. 98–378) required States to establish guidelines, but Congress provided that the guidelines "need not be binding upon such judges or other officials." 42 U.S.C. § 667(b). On October 13, 1988, Congress changed its mandate by deleting the quoted wording and substituted the following:

There shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under criteria established by the State, shall be sufficient to rebut the presumption in that case.

Pub.L. 100–485, Title I, Subtitle A, § 103, 102 Stat. 2346 (1988) (effective October 13, 1989). Deviation from the guidelines, where their application is unjust, is apt, as trial courts in these cases are sitting in equity. *See, e.g., Vellinga, supra* (Henderson, J., dissenting). Do we see some sunshine of common sense beginning to evolve?

The 1989 State Legislature, in extensively revising SDCL ch. 25–7, has now provided, effective July 1, 1989, that deviation from that chapter's guidelines may be made, *inter alia*, for "any financial condition of either parent which would make application of the schedule inequitable." *See* 1989 Sess.L. ch. 220 (HB 1081), now SDCL 25–7–6.10. The way appears open, under the new law, for any trial court of this State to return to adjudication of child support issues based "on the realities of the domestic situation before it" as in *State ex. rel. Larsgaard v. Larsgaard*, 298 N.W.2d 381, 384 (S.D.1980). May the sunshine illuminate the Lady of Equity.

Under the rules of equity, I would affirm the trial court's award of child support on the ground that there was no abuse of discretion. *See, e.g., Herndon v. Herndon*, 305 N.W.2d 917 (S.D.1981). The majority opinion, while reversing the trial court's award for failure to strictly follow guidelines, simultaneously instructs the trial court to sift through the record seeking an excuse to deviate from the guidelines noting, at footnote 3, the absurdity of such guidelines.